**Lyndon H. LaROUCHE, Jr., et al., Plaintiffs,**

v.

**William H. WEBSTER, et al., Defendants.**

**No. 75 Civ. 6010.**

United States District Court, S.D. New York.

April 18, 1983.

Mayer Morganroth, Southfield, Mich., for plaintiffs.

---

John S. Martin, Jr., U.S. Atty. by Steven E. Obus, Asst. U.S. Atty., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

### BACKGROUND

This case has a long and complex history which need not be repeated here. Since it was filed seven years ago, over 180 entries have been placed on its docket sheets and three separate District Judges have filed pretrial opinions on the case.

The plaintiffs are various individuals and political organizations generally centered around Lyndon H. LaRouche, Jr. The complaint describes Mr. LaRouche as the founder of the "National Caucus of Labor Committees (plaintiff NCLC), an internationally recognized author and economist, and ... a candidate for the Democratic nomination for President of the United States in 1980." Second Amended complaint ¶ 6.

The defendants are the Federal Bureau of Investigation ("FBI"), its Director, and the United States Attorney General. Director Webster and Attorney General Smith are sued in their official capacity only. Second Amended Complaint at ¶¶ 9, 10, 11.

The complaint contains two basic claims for relief. The first claim is for injunctive and declaratory relief against the FBI's "bad-faith" and "*ultra vires*" investigation of plaintiffs in violation of their First, Fourth, Fifth and Ninth Amendment rights. The second cause of action is a Freedom of Information Act claim. Affidavit Indexing Second Amended Complaint.

The investigation referred to in the complaint was an internal security investigation of NCLC which terminated in 1977. The present motion deals with a later investigation.

Several motions are pending before this Court. Presently at bar are plaintiffs motion under Fed.R.Civ.P. 65 for a preliminary injunction, and defendants' motion to quash subpoenas served upon the FBI. For the reasons stated below plaintiffs' motion is denied, and defendants' motion is granted.

As framed by plaintiffs, the injunction requested would consist of two parts.[1] The first part would prohibit any further investigation by the FBI into NCLC member Debra Freeman's congressional campaign. The other part would impose a broad ban on any FBI investigation pertaining to plaintiffs or any organization or entity associated with plaintiffs. The injunction would require the FBI to receive court approval prior to any such investigation.

### FACTS

Despite the huge amount of ink spilt on the subject, the facts, as they relate to the Freeman campaign are simple. Ms. Freeman ran for the Democratic congressional nomination in the third district of Maryland in 1980. The *Baltimore Sun* ("Sun"), apparently quite antagonistic to Freeman and the NCLC cause, published a series of investigative articles and editorials which alleged that the Freeman campaign engaged in improper and possibly illegal campaign financing practices. The articles alleged that the campaign misused VISA credit card numbers which were given to pay for magazine subscriptions.

The *Sun* articles came to the attention of the United States Attorney for the District of Maryland. The United States Attorney's Office requested that the FBI conduct a preliminary investigation of the *Sun* charges. Affidavit of Special Agent Charles Wroblewski at 1. It is this investigation which the plaintiffs wish to enjoin. The plaintiffs argue that the investigation

---

1. The injunction would order the defendants:

    1. to refrain from contacting in any fashion contributors to citizens for Freeman, a political committee registered with the Federal Election Commission and to refrain from any further investigation pertaining to Citizens for Freeman; and

    2. to refrain from any further investigation of incident thereto pertaining to plaintiffs in this action or the organizations and entities associated with plaintiffs which are set forth in the Second Amended Complaint;

See plaintiffs' Notice of Motion for a preliminary injunction.

is in bad-faith and intended to chill the exercise of their First Amendment rights.

The challenged investigation has consisted thus far of interviews with people listed as contributors to the Freeman campaign. Plaintiffs argue that this activity will chill their associational rights by generating negative publicity about plaintiffs and discouraging future contributions from individuals who might otherwise have contributed.

*Applicable Standards*

Many courts have stated that a preliminary injunction is an "extraordinary" and "drastic" remedy, but it bears repeating. *See Medical Society of the State of New York v. Toia,* 560 F.2d 535 (2d Cir.1977); *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319 (2d Cir.1969); *Holiday Inns of America Inc. v. B & B Corp.,* 409 F.2d 614 (3rd Cir.1969). There is a heavy burden on the moving party to show that preliminary relief is appropriate. *Robert W. Stark, Jr. Inc. v. New York Exchange, Inc.,* 466 F.2d 743 (2d Cir.1972); *Dopp v. Franklin Nat. Bank,* 461 F.2d 873 (2d Cir.1972); *Berrigan v. Norton,* 451 F.2d 790 (2d Cir.1971).

In this Circuit the granting of a preliminary injunction must ordinarily be based on a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). *See also Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir.1981); *Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1017–18 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196; *KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 14 (2d Cir.1979); *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755, 758–59 (2d Cir.1979); *Seaboard World Airlines, Inc. v. Tiger International, Inc.,* 600 F.2d 355, 359–60 (2d Cir.1979). However, defendants argue that the "fair ground for litigation"

test does not apply in a case such as this, where the issuance of a preliminary injunction may adversely affect the public interest. They maintain that in order to establish a basis for preliminary relief, movants must demonstrate a likelihood of success of the merits. This Court agrees with defendants that the public interest would be threatened by the issuance of the injunction sought in this case. However, we need not determine whether plaintiffs must meet the more stringent standard for relief, for we find that they have failed to show even a "fair ground for litigation". In fact, we find that plaintiff's motion borders on the frivolous.

## DISCUSSION

We begin with the proposition that a party seeking to enjoin a criminal investigation bears an almost insurmountable burden. The decision to investigate, like the decision to prosecute, is one which the Constitution places in the executive branch. The constitutional separation of powers prevents the courts from interfering with the exercise of prosecutorial discretion except under the rarest of circumstances. As the Court of Appeals for this Circuit has stated; "the United States Attorney is part of the executive branch, and as such, his official discretion is not subject to control by the judiciary at the instance of private persons." *Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.), *cert. den.* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978). *See also United States v. Cox,* 342 F.2d 167, 171 (5th Cir.), *cert. den. Sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) ("[As] an incident of the constitutional separation of powers, . . . the courts are not free to interfere with the free exercise of the discretionary powers of the attorneys of the United States . . ."); *In re Grand Jury of Southern Dist. of Alabama,* 508 F.Supp. 1210, 1214 (S.D.Ala.1980) ("Prior to indictment, the grand jury and the prosecutor work hand-in-hand to investigate criminal wrongdoing free from interference by the courts."); *In re Grand Jury Subpoena to Central States,* 225 F.Supp.

923, 925 (N.D.Ill.1964) ("[I]nasmuch as the United States Attorney's Office and the Federal Bureau of Investigation are not part of the judicial branch of the government they are not in the performance of their executive functions, by reason of our constitutional separation of powers system, subject to the supervisory power of the courts."). Thus where the prosecutor can demonstrate reasonable cause to believe that criminal activity may have taken place, it is not the function of the courts to review the wisdom of the prosecutor's decision to investigate, or to inquire into the prosecutor's motives.

■ In the present case there is no question that reasonable cause existed, sufficient to trigger a criminal investigation. The Baltimore Sun articles alerted the United States Attorney for the District of Maryland to the fact that acts constituting criminal fraud, as well as violations of federal campaign laws, may have been committed. The articles gave the names and cities of residence of individuals who had made statements to the Sun's reporter. According to the article, these individuals, who are listed as contributors to Freeman's campaign on federal election campaign records, told the Sun that the money they gave was intended as payment for magazine subscriptions, and that they had never heard of Freeman.[2] See Exhibits attached to Declaration of Charles J. Wroblewski, particularly *Baltimore Sun* articles of 12/7/82 and 12/9/82. In light of the serious allegations raised in the Sun articles and the specificity of the information provided, we find that the U.S. Attorney had not only a right to initiate a criminal investigation, but an absolute duty to do so.

Plaintiffs argue that because the Sun articles are false and defamatory, they cannot provide the basis for a criminal investigation. This argument is simply illogical. The United States Attorney cannot be expected to determine the truth or falsity of allegations before he has had an opportunity to investigate them.[3] Therefore the fact that the charges made in the Sun articles *may* prove to be false is irrelevant to the issue before us; the fact that they raise a *possibility* of criminal activity is sufficient to justify a criminal investigation.

Plaintiffs would have the United States Attorney come to this Court to explain his motives and present evidence that the investigation is in good faith.[4] However, the government's burden is satisfied once it has shown reasonable cause to investigate. If the United States Attorney could be compelled to demonstrate the propriety of its motives every time it initiated a criminal investigation its investigatory function would be substantially impeded.

■ The Court recognizes that the interviews being conducted by the FBI may discourage some political association. However, plaintiffs' associational rights to the extent they are implicated here, must give way to the compelling governmental interest in investigating possible criminal activity. As long as reasonable cause to investigate exists, the mere asking of material questions does not constitute a First Amendment violation. *See Jones v. Unknown Agents of the Federal Election Commission,* 613 F.2d 864 (D.C.Cir.1980) (upholding similar field interviews by the Federal Elections Commission).

For the reasons stated above, this Court finds that plaintiffs' motion to enjoin the Freeman investigation is totally without

---

**2.** The magazines subscribed to included the *Executive Intelligence Review* and *Fusion,* both published by LaRouche.

**3.** Plaintiffs allege that the FBI was "fully aware of the defamatory nature of the Sun's articles and the invidious animus of its editorial board". Plaintiff's Memorandum of Law in Support of Motion for a Preliminary Injunction, at 2. However, the Court can find no factual basis whatsoever for plaintiff's conclusory allegation.

**4.** As stated in the Affidavit of Edward Spannaus, par. 1, plaintiffs seek to have the investigation enjoined "unless and until defendants demonstrate to the Court that they are proceeding in good faith with legitimate law enforcement investigations pursuant to their legal and statutory authority".

merit.[5] It follows that plaintiffs' motion to enjoin any and all investigations of persons or organizations associated with plaintiffs is also meritless. Plaintiffs offer little support for their claim that future FBI misconduct is imminent, other than the complained of investigation of the Freeman campaign itself. Absent a showing of imminent and irreparable harm, it is clear that this Court cannot intervene in the investigative process. As the District of Columbia Circuit has stated:

> The balance between the Executive and Judicial branches would be profoundly upset if the Judiciary assumed superintendence over the law enforcement activities of the Executive branch upon nothing more than a vague fear or suspicion that its officers will be unfaithful to their oaths or unequal to their responsibility. As the Supreme Court stated in *Laird v. Tatum* [408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)]:
>
>> Carried to its logical end, this approach [of judicial supervision of military intelligence activities] would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; ... it is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful government action. [footnote omitted].

*Reporters Committee v. American Telephone & Telegraph*, 593 F.2d 1030, 1065 (D.C.Cir.1978).

Also before the Court is defendants' motion to quash the subpoenas served by plaintiffs on the FBI and Special Agent Charles Wroblewski. Plaintiffs acknowledge that the purpose of the discovery was to prepare for an evidentiary hearing on the preliminary injunction motion. Since that motion has been disposed of without the need for further evidence, there is no longer any

need for such discovery. *See United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974). Therefore, defendants' motion to quash and for a protective order is granted.

It is So Ordered.

---

**5.** Since we find that reasonable cause to investigate has been so clearly demonstrated by the affidavits and exhibits which the Court has received, we find it unnecessary to hold an evidentiary hearing on plaintiff's motion.

There is no doubt that a preliminary injunction may be "denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right so clearly that receiving further evidence would be manifestly pointless." Wright and Miller, 11 Federal Practice and Procedure § 2949 at 478.