**Oliver L. NORTH, Plaintiff,**

v.

**Lawrence E. WALSH, Independent Counsel and Edwin Meese, III, Attorney General, Defendants.**

**Civ. A. Nos. 87–0457, 87–0626.**

United States District Court, District of Columbia.

March 12, 1987.

Barry S. Simon, Brendan V. Sullivan, Jr., Terrence O'Donnell, Nicole K. Seligman, Washington, D.C., for plaintiff.

Guy Miller Struve, Paul Friedman, Audrey Strauss, Washington, D.C., for defendant Lawrence E. Walsh.

James M. Spears, Deputy Asst. Atty. Gen., U.S. Dept. of Justice, Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, Asst. U.S. Atty., Chief, Civil Div., Robert E. Kopp, Thomas Millett, Harold J. Krent, U.S. Dept. of Justice, Washington, D.C., for defendant Edwin Meese, III.

Steven R. Ross, Gen. Counsel to the Clerk, U.S. House of Representatives Charles Tiefer, Deputy Gen. Counsel to the Clerk, U.S. House of Representatives, Janina Jaruzeiski, Janet Potts, Asst. Counsel to the Clerk, U.S. House of Representatives,

Washington, D.C., for House Speaker and Bipartisan Leadership Group of the House, intervenor.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

This case, brought by plaintiff Lt. Colonel Oliver L. North, seeks declaratory and injunctive relief against implementation of certain provisions of the Ethics in Government Act of 1978, Pub.L. No. 95–521, 92 Stat. 1824 (1978), 28 U.S.C. §§ 591–98 ("Ethics Act" or "Act"). The Ethics Act provides for the appointment of an independent counsel to investigate and prosecute certain members of the Executive Branch of the federal government charged with criminal conduct. The defendants are Lawrence E. Walsh, the Independent Counsel appointed pursuant to the Act, and Edwin Meese, III, the United States Attorney General.

Plaintiff asserts that the Independent Counsel provisions of the Act offend the principle of separation of powers and are thus constitutionally infirm. Because North challenges the validity of an ongoing criminal investigation, which has not resulted in an indictment or criminal prosecution against him or any other person, the Independent Counsel and the Attorney General contend that his constitutional argument should not be considered until the investigation has run its course and an indictment, if any, is returned by a grand jury. In short, they argue that at this time plaintiff's constitutional argument should not be considered. The Court agrees. Defendants' procedural challenges are well taken and the complaint is dismissed. The reasons for that determination are set out in this Opinion.[1]

1. This litigation has triggered more than usual interest in the legal community. The Court granted leave to participate as amici curiae to the American Bar Association, Public Citizen, Common Cause, Monroe H. Freedman, former Dean of the Hofstra Law School, and the United States Senate. All filed briefs in support of the constitutionality of the Ethics Act. In addition, leave was granted to the Speaker and the Bipartisan Leadership Group of the United States

House of Representatives to intervene under Fed.R.Civ.P. 24.

The House parties are the Honorable Jim Wright, Speaker of the House of Representatives, and the Bipartisan Leadership Group of the House of Representatives, which includes the Honorable Thomas S. Foley, Majority Leader, the Honorable Robert H. Michel, Minority Leader, the Honorable Tony Coelho, Majority Whip, the Honorable Trent Lott, Minority Whip,

## I.

## *BACKGROUND*

### A.

### The Ethics in Government Act

The independent counsel machinery challenged here was a response to Congress' concern that the Department of Justice had experienced in the past, and would continue to experience, difficulty in investigating and prosecuting members of the Executive Branch. S.Rep. No. 95–170, 95th Cong., 1st Sess. 3 (1977), U.S.Code Cong. & Admin.News 1978, p. 4216. Thus, the Congress sought to eliminate any potential improprieties stemming from the Executive Branch investigating its own officers. The necessity for such legislation was underscored by the recent events surrounding the Watergate scandal, including the dismissal of Special Prosecutor Archibald Cox by President Nixon. The Senate proposed as early as June of 1974 that a permanent Office of the Public Attorney be established to investigate criminal cases that could lead to potential conflicts of interest within the executive branch. *Final Report of the [Senate] Select Committee on Presidential Campaign Activities*, S.Rep. No. 93–981, 93rd Cong., 2d Sess. 96 (1974). Committees of both the House and the Senate conducted extensive hearings beginning in 1975 and culminating three years later in the enactment of the Ethics Act with its independent counsel provisions.

The proposed legislation received widespread support from the legal community. While the bills that were to become the Act were being considered by the House and Senate committees,[2] the American Bar Association, professional and public interest groups, and legal scholars expressed their support for the special prosecutor mechanism.[3]

The legislative efforts expended by the Congress finally bore fruit. Differences between the Senate-passed bill and the bill reported to the House were ironed out in conference, and the special prosecutor legislation was signed into law by the President as Title VI of the Ethics in Government Act of 1978.

A reauthorization amendment passed in 1983 extended the law for five years. The present law expires on January 2, 1988, and it is anticipated that the Congress will consider this year whether to extend the law and, if so, whether to amend it.

### 1.

The Ethics in Government Act set in place a procedure for the judicial appointment of an independent counsel to investigate certain members and former members of the Executive Branch. Pub.L. No. 95–521, tit. vi, 92 Stat. 1867–75 (codified as amended at 28 U.S.C. §§ 591–98). The relevant provisions of the statute as applied to this proceeding are briefly summarized.

The Chief Justice assigns three judges to a special division of the United States Court of Appeals for the District of Columbia Circuit, created for the purpose of appointing the Independent Counsel. 28 U.S.C. § 49. Whenever the Attorney General receives information sufficient to constitute grounds to investigate allegations that any person covered under the Act[4]

and the Honorable Peter W. Rodino, Chairman of the House's Committee on the Judiciary.

2. Similar views were also expressed concerning earlier special prosecutor legislation. *See Special Prosecutor Hearings Before the Senate Committee on the Judiciary*, 93rd Cong., 1st Sess. (1973) (views of Prof. Archibald Cox; Prof. Philip B. Kurland, Prof. Raoul Burger, Prof. Paul Freund, and Prof. Philip Heyman).

3. The Justice Department also supported the legislation. John H. Harmon, Acting Assistant Attorney General, Office of Legal Counsel, testified that "on balance we think the extraordinary circumstances which would warrant a resort to

a special prosecutor would also justify granting him the measure of independence provided." *Public Officials Integrity Act of 1977, Blind Trusts and Other Conflicts of Interest Matters: Hearings Before the Senate Comm. on Governmental Affairs*, 95th Cong., 1st Sess. 15–16 (1977).

4. Persons covered under the Act are those enumerated in 28 U.S.C. § 591(b) and (c), the investigation of whose activities is presumed or found to create conflicts of interest or the appearance thereof. *See* S.Rep. No. 95–170, 95th Cong., 1st Sess. 53 (1977).

has committed a violation of any federal criminal law other than a petty offense, he shall conduct an investigation of the matter for a period not to exceed ninety days. 28 U.S.C. § 592(a)(1).

If the Attorney General finds reasonable grounds to believe that the matter warrants further investigation or prosecution, he is then required to apply to the special division of the Court for the appointment of an independent counsel and to provide sufficient information to assist in selecting the independent counsel and in defining his prosecutorial jurisdiction. 28 U.S.C. § 592(c)(1), 592(d)(1). Upon receipt of such application, the special division shall then appoint an appropriate independent counsel and define his prosecutorial mandate. 28 U.S.C. § 593(b).

The independent counsel enjoys full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice and the Attorney General. 28 U.S.C. § 594(a). His investigative and prosecutorial functions are broad and authorize him to conduct proceedings before grand juries and other investigations; participate in court proceedings and engage in litigation where necessary; determine whether to contest assertions of testimonial privileges; apply for grants of immunity for any witness, or for warrants, subpoenas, or other court orders; inspect, obtain, or use tax returns; frame and sign indictments, file informations, and handle all aspects of any case in the name of the United States. *Id.*

The independent counsel may request assistance from the Department of Justice and secure any of its records, files or other materials relevant to matters within his prosecutorial jurisdiction. 28 U.S.C. § 594(d). He is required to comply with the written or other established policies of the Department regarding criminal law enforcement where possible,[5] and has full authority to dismiss matters within his jurisdiction at any time prior to prosecution, if

to do so would be consistent with such policies. 28 U.S.C. § 594(f), (g). If he should determine that any matter within his jurisdiction does not warrant prosecution, he must report to the appointing court the reasons for that determination. 28 U.S.C. § 595(b).

The independent counsel may be removed only for cause by the Attorney General, who must then report to the appointing court and to Congress the specific reasons for the removal. 28 U.S.C. § 596(a)(1), (2). If so removed, he may seek judicial review of that action before the appointing court and may obtain reinstatement if the removal was based upon an error of fact or law. 28 U.S.C. § 596(a)(3).

### B.

### The Investigation

On December 4, 1986, defendant Attorney General Meese applied for the appointment of an Independent Counsel to investigate whether violations of federal criminal law were committed in the transfer of arms to Iran and in the disposition of the proceeds from that transfer. Plaintiff North and other government officials were allegedly involved in such activities. North had earlier been a staff member of the National Security Council; he was removed from that assignment in late November. On December 19, 1986, Walsh was appointed as Independent Counsel to investigate possible violations of federal criminal laws by North, or by others acting in concert with North, from 1984 to the present.

Investigation of Lt. Colonel North was authorized by § 591(c) of the Act. That section provides in part that "the Attorney General may conduct an investigation and apply for an independent counsel ... if [he] determines that investigation of [a] person [not covered under § 591(a) or (b)] by the Attorney General or other officer of the

---

5. As originally enacted, the Act only required the Independent Counsel to comply with Justice Department policies "to the extent that [he] deems appropriate." In amending § 594(f) Congress sought to place the special prosecutor

function more closely in line with that of Justice Department investigators. *See* B. Civilletti, *Post Watergate Legislation in Retrospect,* 34 Sw. L.J. 1043 (1981).

Department of Justice may result *in a personal, financial or political conflict of interest."* (emphasis added)

Since his appointment, Mr. Walsh has pursued the investigation with the diligence expected. A grand jury was empaneled on January 28, 1987. Walsh has served numerous subpoenas and has explored various aspects of North's operations. The media has reported that immunity was granted to one or more persons to secure their testimony.

### C.

### The Present Litigation

On February 24, 1987, North filed a complaint broadly challenging the investigation and seeking equitable relief against the Independent Counsel and the Attorney General. In response, on March 2, defendant Walsh filed a motion to dismiss the complaint, asserting first, that plaintiff's action constitutes an impermissible collateral attack upon an ongoing criminal investigation; second, that the claims presented are premature and not ripe for adjudication; and lastly, that the Independent Counsel provisions of the Act are constitutional. The Attorney General has similarly filed a motion to dismiss. He joins in Walsh's procedural arguments and, in addition, maintains that plaintiff lacks standing to challenge the Act's constitutionality.

Meanwhile on March 5, 1987, the Attorney General promulgated a new regulation, 28 C.F.R. §§ 600.1 *et seq.*, establishing an Office of Independent Counsel: Iran/Contra. He announced that his action was undertaken with the proper statutory authority [6] and with the full support of the President. He noted specifically that because of the constitutional challenges asserted in the pending lawsuit, he "found it advisable to assure the courts, Congress, and the American people that this investigation [would] proceed in a clearly authorized and constitutionally valid form regardless of the eventual outcome of the *North* litigation." At the same time that

the regulation was announced, Attorney General Meese appointed Walsh as Independent Counsel within the Department of Justice. Thereafter, in prompt response, on March 6, 1987, North's counsel filed a new complaint .in this Court, Civil Action No. 87–0626, against Meese and Walsh charging that the enabling regulation promulgated by the Attorney General was "rife with constitutional and statutory infirmities." (Plaintiff's Response to Defendant's Motion to Dismiss at 3.)

On the morning of March 9, 1987, the Independent Counsel filed a motion to dismiss the new complaint. At the hearing on defendants' earlier motions to dismiss held later that day, all parties agreed to argue the procedural issues presented by both complaints. Accordingly, the motions hearing of March 9, 1987, which was initially scheduled to consider only a motion to dismiss in the first complaint, was by agreement among the parties extended to consider the procedural issues presented in both complaints.

### II.

### ANALYSIS

◼ It is black letter law that before this Court may exercise jurisdiction over plaintiff North's substantive challenge to the constitutionality of the Ethics in Government Act, he must present a justiciable "case or controversy." Defendants have argued that, for a variety of reasons, plaintiff has failed to do just that. They raise two crucial threshold questions. First, does plaintiff allege a "distinct and palpable injury" sufficient to confer standing? Second, does plaintiff present a controversy ripe for review?

After careful consideration of the parties' memoranda, and the oral argument of counsel at the March 9, 1987, hearing, this Court concludes that plaintiff has not alleged a sufficient hardship to meet the ripeness standard and to warrant anticipa-

---

**6.** 28 U.S.C. §§ 509, 510, 515 (delegation of authority by Attorney General); 5 U.S.C. § 301 (authorizes Heads of Departments to promul-

gate regulations for the government of their Departments).

tory judicial involvement in the ongoing criminal investigation. Therefore, the Court need not reach the question of whether plaintiff has standing.

■ The threshold procedural question presented is whether North's constitutional claims are ripe for adjudication at this time. In analyzing whether plaintiff's claims are ripe, the Court must address two factors. First, as a matter of constitutional importance, the Court must evaluate "the fitness of the issue for judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Second, the Court must consider "the hardship to the parties of withholding court consideration." *Id.*

### A.

### Constitutional Considerations

Plaintiff's constitutional challenge to the Ethics in Government Act meets the first prong of the *Abbott Laboratories* test. He raises purely legal issues, challenging Congress' power to establish the Office of Independent Counsel as a prosecuting arm insulated from the control of the Executive Branch. He argues that the authority to prosecute the law vests exclusively in the Executive Branch. Any official who exercises prosecutorial powers must, accordingly, be appointed by the Executive and be removable at his unfettered discretion.

Plaintiff's complaint raises fundamental issues concerning the doctrine of separation of powers, issues which do not require the development of a factual record. His challenge strikes at the core of Walsh's authority to conduct a criminal investigation. The heart of his quarrel is with the very existence of the Office of Independent Counsel, not with the way the Independent Counsel has chosen to proceed with the investigation.[7] Whether or not defendant Walsh enters an indictment against North has no bearing on a challenge to the consti-

tutional infirmities of the Act. The issues surrounding this challenge present a "case or controversy" sufficiently concrete to meet the first prong of the ripeness test. *See Atlantic Richfield Co. v. U.S. Dep't of Energy*, 769 F.2d 771, 783 (D.C.Cir.1984) ("ARCO").

### B.

### Prudential Considerations

The second prong of the ripeness test raises prudential concerns and requires the Court to assess, in light of the "totality of the circumstances," whether the hardship to the parties of withholding consideration warrants immediate judicial review. *ARCO*, 769 F.2d at 783. Both plaintiff's challenge to the constitutionality of the statute, and the relief requested to enjoin the criminal investigation, persuade the Court to stay its hand and not to proceed with a consideration of the merits of plaintiff's claim.

### 1.

### Judicial Self-Restraint

■ It is established judicial doctrine that courts should exercise self-restraint when confronted with constitutional issues. *E.g., Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936). (Brandeis, J., concurring) This case presents issues of particularly grave constitutional importance. North's arguments do not merely challenge the legality of the Office of Independent Counsel. His rather doctrinaire approach to separation of powers issues would require the Executive to reserve all prosecutorial powers for itself. Such a requirement would call into question the constitutionality of vesting prosecutorial power in independent agencies and other institutions. Therefore, in finding that plaintiff's claim is not ripe for review, the Court

---

7. Plaintiff makes ancillary challenges to the scope of the Independent Counsel's authority. He contends that the Counsel's power to investigate subject areas which touch upon foreign affairs and national security matters invade an exclusively executive sphere. However, until

the Independent Counsel utilizes his powers to "intrude" into these fields, plaintiff's claims remain completely speculative. As such, they do not meet even the constitutional requirements for ripeness.

heeds the sage words of the late Judge Harold Leventhal of this Circuit:

> [W]e should be particularly mindful of that policy when we are asked to delineate, as we are in this case, the respective powers and duties of the major branches of government. That kind of broad issue enhances the general temptation of a record lacking concrete detail, toward abstractness in analysis and broad pronouncements unsuited to the subtle workings of our constitutional system.

*Clark v. Valeo,* 559 F.2d 642, 662 (D.C.Cir. 1977). (Leventhal, J., concurring.)

### 2.
### Judicial Policy Against Enjoining Criminal Investigations

■ The strong policy against intervening in ongoing criminal investigations also persuades the court to refrain from reviewing plaintiff's substantive claim. Courts have almost never found that an ongoing criminal investigation imposes a sufficient hardship to the person investigated to warrant judicial review prior to his or her indictment. The standard for obtaining any form of injunctive relief is high, *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971), but a party who seeks to enjoin a criminal investigation has a particularly heavy burden. Our Court of Appeals in denying such equitable relief ruled that "only the most extraordinary circumstances warrant anticipatory judicial involvement in criminal investigations." *Reporters Committee v. American Telephone and Telegraph,* 593 F.2d 1030, 1065 (D.C.Cir.1978) (reporters constitutional rights to free speech found insufficient to require advance notice for purposes of challenging third party releases of reporters' billing records to criminal investigation).

The Supreme Court has routinely rejected collateral challenges which impede ongoing criminal investigations. In the leading authority of *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), subpoenaed witnesses refused to appear before the grand jury, contending that the law which the grand jury was enforcing, the Federal Corrupt Practices Act, was unconstitutional. The Court ordered the witnesses to testify, ruling that "an individual is not entitled to challenge the authority of the grand jury, provided they have a de facto existence and organization." *Id.* 280, 39 S.Ct. at 470.[8] In this proceeding, plaintiff levies constitutional challenges against Walsh's position as Independent Counsel. But Walsh has de facto authority and his office "de facto existence." Defendant Walsh was appointed and is acting pursuant to a law enacted by Congress and signed by the President, a law which carries the presumption of constitutionality.[9]

---

**8.** *See also, e.g., United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (witnesses required to provide voice exemplars to duly constituted grand jury despite claim that evidence was obtained through illegal search and seizure); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (witness cannot invoke exclusionary rule to avoid testifying before grand jury); *United States v. A.W.J.,* 639 F.Supp. 1558 (D.Minn.1986) (juvenile's motion to stay the conversion of juvenile proceeding in adult criminal prosecution denied as interfering with criminal investigation); *Larouche v. Webster,* 566 F.Supp. 415 (S.D.N.Y.1983) (courts will not enjoin a criminal investigation undertaken in good faith); *Matter of Doe,* 546 F.2d 498 (2d Cir.1976) (claim that subpoena issued to target's investigation exceeded grand jury's investigative powers properly raised at trial on the merits); *In re Grand Jury Proceedings,* 525 F.2d 151 (3rd Cir.1975) (claim that identical action proceeding before state court inadequate to sustain an indefinite state of federal grand jury investigation).

**9.** Although a careful look at the constitutionality of the Act must await a time when plaintiff has alleged a concrete injury, defendant Walsh has offered good reasons to believe that the Act will be upheld. Plaintiff's rigid vision of the separation of powers doctrine is not supported by our constitutional structure of government. The Constitution explicitly intermingles the traditional functions of government to guard against abuses of power and conflicts of interest. *See Buckley v. Valeo,* 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976); U.S. Constitution art. I § 2 and art. II § 4. Nor is his interpretation supported by Supreme Court jurisprudence. In both *Bowsher v. Synar,* —— U.S. ——, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) and *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), the court struck down legislation where Congress usurped Executive functions for

The rationale behind the judicial policy against intervening in a criminal investigation is threefold. First, the courts want to protect the public's interest in the fair and expeditious enforcement of the criminal laws. Permitting challenges at the pre-indictment stage would impede the criminal investigation by "saddling the grand jury with minitrials and preliminary showings." *U.S. v. Dionisio,* 410 U.S. 1, 17–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973). Second, the courts seek to balance the defendant's need to assert his rights against the judiciary's interest in conserving its resources. The criminal justice system is structured to provide the criminal defendant ample opportunity to vindicate his rights *after* he is indicted. *See* Fed.R.Crim.Proc. 12(b). Finally, principles of comity and separation of powers counsel courts against intervening in a criminal investigation conducted by another branch of government. *See Reporters Committee v. AT & T,* 593 F.2d at

1065. Ironically, enough, the very doctrine plaintiff invokes to strike down the Ethics in Government Act persuades the Court against addressing his claim on the merits.

Plaintiff attempts to distinguish the wealth of precedent against intervention in criminal proceedings on the grounds that his challenge strikes at the very authority of the investigative body to investigate, rather than at specific actions undertaken by it. Though plaintiff's distinction at first blush appears to have some merit,[10] it has been explicitly rejected by our Circuit, in *Hastings v. Judicial Conference of the United States,* 770 F.2d 1093 (D.C.Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 562 (1986). In strikingly parallel circumstances, District Judge Hastings challenged the core authority of a committee of judges established by statute to investigate wrongdoing allegedly committed by members of the Judiciary. He argued that judges cannot exercise the

itself. It concluded that the separation of powers doctrine forbids one branch of government from acting as both a lawmaker and an executor at the same time. But as the Court stated in *Nixon v. Administrator of General Services,* 433 U.S. 425, 442, 97 S.Ct. 2777, 2789, 53 L.Ed.2d 867 (1977), the doctrine does not mandate "airtight departments of government." It explicitly repudiated plaintiff's antiquated position stating "a hermetic sealing off of the three branches of government would preclude the establishment of a nation governing itself effectively." *Buckley v. Valeo,* 424 U.S. at 121, 96 S.Ct. at 683.

The Ethics in Government Act was enacted to ensure that our government continues to govern itself effectively. Neither Congress nor the courts appropriated powers to themselves at the expense of the Executive Branch. The Act places a check on complete Executive discretion in conducting prosecutions only when conflicts of interest exist within the Executive Branch. It prevents potential improprieties arising out of having the Executive retain complete control over the investigations of his closest associates. The very purpose of the office requires a degree of independence from Presidential control.

In short, the Ethics Act is a "modest, narrowly drawn prophylactic ... measure" which should not be struck down under any "crabbed interpretation" of the separation of powers doctrine. *Banzhaf v. Smith,* 588 F.Supp. 1498, 1508 (D.D. C.1984), *rev'd on other grounds,* 737 F.2d 1167 (D.C.Cir.1984). *See also Deaver v. Seymour,* —— F.Supp. ——, ——–——, C.A. No. 87–0477, slip op. at 4–5 (D.D.C. Mar. 11, 1987) (statute most likely constitutional).

10. The court would be more inclined to enjoin prosecution conducted by an unauthorized private citizen who had all the coercive investigatory and prosecutorial powers of the government at his or her disposal. However, defendant Walsh is not such a "vigilante" as plaintiff alleges. *See* Transcript of Proceedings (Mar. 9, 1987) at 52. He is an Independent Counsel duly appointed pursuant to the Ethics in Government Act. Nor are his powers "unlimited." His powers are carefully circumscribed by the Act itself. The scope of his jurisdiction is narrowly defined by a special panel of judges, 28 U.S.C. § 593(b). He is required to comply with the written policies of the Justice Department unless not possible. *Id.* § 594(f). Furthermore, the statute renders the Independent Counsel ultimately responsible to the Executive Branch. The Executive Branch initiates the appointment of the Independent Counsel if the Attorney General finds "reasonable grounds" to believe that an investigation is warranted. *Id.* § 592(c)(1). If the Attorney General determines that the allegations are not grounded in sufficient facts to warrant further investigation, he must notify the appropriate court and the inquiry terminates. *Id.* § 592(b)(1). Finally, the Attorney General is the only authority vested with the power to remove the independent counsel if he finds "good cause" to do so. *Id.* § 596(a)(1). These provisions restrict the Independent Counsel from becoming the overzealous prosecutor plaintiff fears.

powers of investigation and prosecution. These powers, he claimed, were prosecutorial tools vested in the Executive Branch. Despite Judge Hastings' challenge to the very authority of the investigating body, our Circuit refused to consider the constitutionality of the investigation. The Court concluded that his failure to show "a serious and irremediable injury" precluded "disruptive injunctive relief by federal courts." *Id.* at 1102.

Judge Hastings presented a stronger case for intervention than the one here. Because the investigation of Judge Hastings was a civil, not criminal, proceeding the court was less troubled by its possible interruption. Moreover, the injury to Judge Hastings resulting from being the subject of an allegedly unduly constituted investigation was both far greater than that faced by plaintiff here and more readily redressable. His investigation could have resulted in his impeachment. However, if the court were to have enjoined that investigation, he would have been free from any other investigation.[11] By contrast, the relief that plaintiff North seeks would not preclude alternative criminal investigations. In fact, at oral argument, plaintiff conceded that the United States Attorney would have authority to lead the investigation against him. Transcript of Proceedings (Mar. 9, 1987) at 68. Thus, plaintiff's only claim of injury is that he is the subject of an investigation which is headed by a public official who is, he alleges, without that authority. This "injury"

does not rise to the level of concrete hardship warranting judicial review at this time.[12]

North does not cite a single case in which an ongoing criminal investigation was halted to support his claim for extraordinary relief.[13] Plaintiff's sole support for his position is a civil case in the Eleventh Circuit, *In the Matter of Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit,* 783 F.2d 1488 (11th Cir. 1986), *cert. denied,* —— U.S. ——, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986). There the Eleventh Circuit adjudicated the merits of Judge Hastings constitutional challenges to the Judicial Conduct statute which our Circuit concluded were unripe one year earlier. Subsequent to our Circuit's decision, the committee subpoenaed the Judge's law clerks and secretary. They refused to appear before the committee arguing that the Judiciary did not have the power to investigate and prosecute. Finding that the law clerks had "surrogate" standing to present Judge Hastings' constitutional claims, the court proceeded to the merits. When the subpoenaed witness called into question the constitutional legitimacy of the investigating body, the court concluded "it seems only reasonable that we should decide whether the very existence of the committee for its assigned purposes violates the Constitution before allowing the committee to intrude upon confidential communications." *Id.* at 1501. However, the Eleventh Circuit did not rely on any precedent

---

11. Acquittal following a prior criminal proceeding precluded any further criminal prosecution.

12. Plaintiff asserts that he suffers further injury because defendant Walsh might handle the investigation differently than one handled under the auspices of the Department of Justice. However, as noted earlier, the Act requires the Independent Counsel to act in accordance with the Department of Justice policies. Therefore North is being investigated according to the same standards that a Justice Department officer would investigate any other person. His claim implies that an investigation conducted under the auspices of the Justice Department would be undertaken with less vigor. As such it illustrates the precise need for an independent

counsel who is not beholden to the Executive Branch.

13. The rule against enjoining a criminal investigation for abuses of authority is not absolute. When parties challenge instances of egregious prosecutorial misconduct, courts have enjoined criminal investigations. *See Olagues v. Russoniello,* 797 F.2d 1511 (9th Cir.1986) (collection of list of voters who requested bilingual ballots by United States Attorney to investigate voter fraud impermissibly chills the right to vote; that harm is egregious enough to enjoin the investigation). However the Court concludes that the injury to plaintiffs alleged in *Olagues*—that a citizen's right to vote would be chilled—is far more serious than the injury to plaintiff North.

to justify reaching the appellant's constitutional challenge before the termination of the investigation. In fact they admitted "the answer is not free from doubt." *Id.* at 1502. Taken alone, this opinion by the Eleventh Circuit is a weak reed upon which to support the extraordinary relief plaintiff requests. In light of our own Circuit's rejection of the reasoning subsequently adopted by the Eleventh Circuit, the Court finds no reason to grant the extraordinary relief he seeks.[14] Colonel North, like any other potential criminal defendant, can raise his objections by appropriate motions, *if* and *when* an indictment is entered.

### III.

### CONCLUSION

The Nation demands an expeditious and complete disclosure of our government's involvement in the Iran/Contra affair. In serving this important public interest, the Independent Counsel is pursuing the investigation energetically and responsibly. The Executive Branch has spoken out in support of the vigorous and comprehensive investigation conducted by Walsh and has bestowed upon him a dual position within the Executive Branch to ensure that the investigation continues unimpeded. Despite this concerted effort by all to ensure that the investigation proceeds with dispatch, plaintiff North filed two actions seeking extraordinary injunctive relief. He asks the Court to intercede and to halt the investigation in its tracks.

The Court need not and should not hear plaintiff's challenges at this time. The plaintiff has not suffered an injury of sufficient keenness to warrant the Court's intercession. For that reason, the Court finds that plaintiff's challenge to the constitutionality of the independent counsel ma-

chinery is not ripe for adjudication and that his complaints should be dismissed.

An appropriate Order will be entered.

---

**14.** It should be noted that the claims before the Eleventh Circuit involved the assertion of testimonial privileges the abrogation of which would necessarily have resulted in immediate harm.

In this proceeding, neither plaintiff North nor anyone in privity with him has asserted any constitutional, statutory or common law privilege.