**METRO MEDICAL SUPPLY, INC., et al.**

v.

**Donna E. SHALALA, et al.**

No. 3:96–1075.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 12, 1996.

Hugh C. Howser, Jr., Nashville, TN, for Plaintiff.

Van S. Vincent, Nashville, TN, for Defendant.

## ORDER

CAMPBELL, District Judge.

This is a civil action to enjoin a criminal investigation and prosecution.

Pending before the Court are the following Motions: Motion for Preliminary Injunction (Docket No. 2); Emergency Motion For Expedited Temporary Injunction Hearing (Docket No. 7); Motion To Quash Subpoena (Docket No. 15); and Defendant's Response To Plaintiffs' Motion For Preliminary Injunction And Request That Plaintiffs' Verified Complaint Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted (Docket No. 9).

The Court held a hearing on all pending motions on December 11, 1996. For the reasons described herein, the Court rules on the pending Motions as follows:

The Motion For Preliminary Injunction (Docket No. 2) is DENIED. The Emergency Motion For Expedited Temporary Injunction Hearing (Docket No. 7) is DENIED as to the relief requested, but GRANTED to the limited extent that the Court held a hearing on December 11, 1996. The Motion To Quash Subpoena (Docket No. 15) is DENIED as moot. The Court found the proffered testimony of Earl Davis and Larry Loftis unnecessary to a determination of the Motion For A Preliminary Injunction.[1] The request that Plaintiffs' Verified Complaint be dismissed for failure to state a claim upon which relief may be granted (Docket No. 9) is held under advisement until the Plaintiffs have an opportunity to file a written response in accordance with Local Rule 8(b)(3).

## I.  INTRODUCTION

Metro Medical Supply, Inc., Bart Ashley, and F.H. Thompkins, III have filed a Complaint asking for certain declaratory and injunctive relief. F.H. Thompkins subsequently filed a notice of voluntary dismissal and is no longer a party.

The Complaint asks this Court to "enter a preliminary injunction, after notice and hear-

---

1. Plaintiffs sought to call Earl Davis and Larry Loftis, employees of the Department of Health and Human Services and the Food and Drug Administration, to testify about their agency's interpretations of the applicable FDA statutes and regulations to demonstrate that such statutes and regulations are void for vagueness. The Court excluded the testimony because, for purposes of the Motion For Preliminary Injunction, the Court assumed that the testimony would support Plaintiffs' claim of vagueness. In addition, to the extent the witnesses would testify what the law is, such testimony invades the province of the Court, whose duty it is to determine the law, and the testimony is thereby excluded under Federal Rules of Evidence 701 and 702. Also, the testimony is excluded under Rules 403 and 611 of the Federal Rules of Evidence as unduly cumulative in light of the record presented to the Court. The testimony is further excluded under Rule 403 to preclude the use of this civil case to conduct discovery regarding the criminal investigation, which would be unfairly prejudicial, given the scant probative value of such testimony.

ing, in which Defendants are enjoined from enforcement of the PDMA/PDA of 1992, 21 U.S.C. § 353(e)(1)(A), *including any criminal investigation or criminal prosecution,* as to these Plaintiffs only, until such time as the Court declares the rights of the parties" (Docket No. 1, p. 18) (emphasis added).

Exhibit 8 to the Complaint indicates that the United States Attorney is also investigating Metro Medical Supply, Inc. for certain other alleged offenses (*e.g.,* wire fraud, money laundering, forfeiture).

Plaintiffs subsequently moved this Court for a preliminary injunction enjoining the Defendants from investigating and/or prosecuting them with respect to any alleged violations of the Prescription Drug Marketing Act of 1987 ("PDMA"), as amended by the Prescription Drug Amendments of 1992 ("PDA"), including but not limited to violations of 21 U.S.C. §§ 331(t) or 353(e). For grounds, the Plaintiffs state that:

(1) Unless restrained by this court, the defendants will continue their ongoing criminal investigation of the plaintiffs and it is reasonably believed will wrongfully attempt to criminally prosecute the plaintiffs for asserted violations of the PDMA as amended by the PDA, including but not limited to 21 U.S.C. §§ 331(t) and 353(e);

(2) Such actions by the defendants will result in irreparable injury, loss and damages to the plaintiffs, as more particularly appears in the Verified Complaint, filed simultaneously herewith;

(3) The issuance of a preliminary injunction as requested will not cause undue inconvenience or loss to the defendants but will prevent irreparable injury to the plaintiffs;

(4) The plaintiffs are likely to succeed on the merits in a trial on this declaratory judgment claim; and,

(5) The issuance of the requested preliminary injunction is likely to advance the public interest.

(Docket No. 2).

Defendants in this case are Donna E. Shalala, Secretary of the Department of Health and Human Services; Dr. David Kessler, Commissioner of the Food and Drug Administration; Janet Reno, Attorney General of the United States; and John M. Roberts, United States Attorney for the Middle District of Tennessee.

Plaintiffs then filed an Emergency Motion For An Expedited Hearing (Docket No. 7) ("Emergency Motion"). In the Emergency Motion, Plaintiffs essentially restate their Motion For A Preliminary Injunction and add an alternative request. Plaintiffs, alternatively, request that this Court quash the grand jury subpoena of F.H. Thompkins until such time as a hearing on Plaintiffs' "motion for a temporary injunction may be had" (Docket No. 7). Plaintiffs also request a continuation of the grand jury proceeding to evaluate a potential conflict of interest with counsel.

At the time the Plaintiffs' Motions were filed, F.H. Thompkins was scheduled to give his grand jury testimony on December 11, 1996 at 1:00 p.m. The Government's Response indicates that the testimony has now been continued thirty days. Moreover, as discussed above, F.H. Thompkins is no longer a party.

The PDMA and PDA contain certain provisions that require a paper trail for the sales history of certain prescription drugs. This is commonly referred to as a "pedigree." Plaintiffs claim that the pedigree provisions of the PDMA and PDA are unconstitutional on two grounds. First, Plaintiffs assert that the pedigree provisions are unconstitutionally void for vagueness under the Fifth Amendment of the Constitution. Second, Plaintiffs aver that the pedigree provisions constitute an unconstitutional delegation of legislative authority, under Article I, Section 1, of the Constitution, to the FDA and, in turn, to private drug manufacturers.

Plaintiffs allege that they are suffering irreparable injury from the ongoing grand jury investigation and threat of prosecution because they are losing business, suffering damage to their reputations, and that there is a negative impact on a possible sale of Metro Medical Supply, Inc. stock.

Plaintiffs have asked the Court to declare the relevant pedigree provisions of the PDMA and PDA unconstitutional and to en-

join the Defendants from any further criminal investigation or prosecution of them until such time as the Court declares the rights of the parties.

## II. MOTION TO ENJOIN CRIMINAL INVESTIGATION AND PROSECUTION

■ Obtaining an injunction against a criminal investigation or prosecution is very difficult. Courts are extremely reluctant to enjoin criminal investigations and prosecutions. This Court has found no published decision in which a court enjoined an ongoing federal criminal investigation under similar circumstances. Dicta exist, however, suggesting that a prosecutor could be enjoined for repeatedly engaging in illegal or unconstitutional actions. Paul S. Diamond, *Federal Grand Jury Practice and Procedure* § 401[E] (3rd ed.1995). The reluctance of federal courts to enjoin criminal investigations and prosecutions is well founded.

In the event the Court issued the requested injunction against the United States Attorney, the pending grand jury investigation generally would be effectively enjoined given the role of the United States Attorney in such matters.[2] Therefore, the law applicable to grand juries provides helpful context and guidance.

In *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991), the Supreme Court summarized the role of a federal grand jury in criminal investigations:

> The grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. Unlike this Court, whose jurisdiction is predicated on a specific case or controversy, the grand jury, 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'... The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush. 'A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'
>
> . . . .
>
> The investigatory powers of the grand jury are nevertheless not unlimited.... Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass.
>
> . . . .
>
> We begin by reiterating that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority.... Consequently, a grand jury subpoena issued through normal channels is presumed to be reasonable and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance.

498 U.S. at 301, 111 S.Ct. at 725–727.

■ In addition to the above considerations, to obtain an injunction against a criminal investigation or prosecution, the moving party is required to prove the customary prerequisites to the granting of injunctive relief under Rule 65. This, of course, assumes that the Court finds it necessary to determine the merits of the substantive claims.

■ The test for whether a court should issue preliminary injunctive relief is as follows:

> (1) whether the plaintiff has shown a strong or substantial likelihood of success on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of a preliminary injunction will result in substantial harm to oth-

---

**2.** Grand juries may, under certain circumstances, investigate matters without the assistance of the United States Attorney. However, unquestionably, an injunction against the United States Attorney would negatively affect the work of the grand jury. In any event, the United States Attorney is charged with the responsibility of prosecuting indictments by grand juries.

ers; and (4) whether the public interest is advanced by the injunction.

*Thomas By and Through Thomas v. Davidson Academy,* 846 F.Supp. 611, 616 (M.D.Tenn.1994).

Plaintiffs have cited the case of *Boggs v. Bowron,* 842 F.Supp. 542 (D.D.C.1993) as their sole authority for the proposition that the criminal investigation in this case should be enjoined.

It is important to note, however, that the *Boggs* Court declined to issue an injunction of an ongoing criminal investigation. In that regard, the *Boggs* Court noted:

> Because the separation of powers doctrine dictates substantial deference with respect to prosecutorial decisionmaking in investigations and prosecutions, there is a strong policy against intervening in ongoing criminal investigations.... The standard of obtaining any form of injunctive relief is high, but a party who seeks to enjoin a criminal investigation has a particularly heavy burden.... Our Court of Appeals has denied such equitable relief, ruling that "only the most extraordinary circumstances warrant anticipatory judicial involvement in criminal investigations."

842 F.Supp. at 547.

Thus, Plaintiffs have failed to cite any case in which a court granted the relief they have requested. Moreover, the one case cited by Plaintiffs notes that there is a "heavy burden" and that injunctive relief is warranted only in "extraordinary circumstances."

In *Blalock v. United States,* 844 F.2d 1546 (11th Cir.1988), the plaintiff sought to permanently enjoin a grand jury investigation on the grounds that the investigation "has taken too long," among other reasons. *Id.* at 1548. The court held:

> All that we need to say is that appellant is not entitled to an injunction because he has an adequate remedy at law. It is settled law that 'courts of equity should not act ... when the moving party has an ade-

quate remedy at law and will not suffer irreparable injury if denied equitable relief.'... Equity always has been hesitant to act if its remedy would disrupt an ongoing grand jury investigation.... In the present case, appellant has an adequate legal remedy in the form of a motion to dismiss his indictment, if one is handed down.

844 F.2d at 1549.

The adequate remedy at law is Rule 12(b)(1) of the Federal Rules of Criminal Procedure which permits motions to dismiss charges for defects in the institution of a prosecution.[3]

In *Deaver v. Seymour,* 822 F.2d 66 (D.C.Cir.1987), the plaintiff sought to enjoin an independent counsel from continued exercise of prosecutorial authority on the grounds that the independent counsel law was unconstitutional. The court held:

> Even were we disposed to agree entirely with appellant's constitutional arguments, we think he has no right to an injunction restraining a pending indictment in a federal court.
>
> ....
>
> Moreover, as the district court noted, Rule 12(b)(1) of the Federal Rules of Criminal Procedure permits any defendant to raise by motion, after indictment but before trial, a defense based on 'defects in the institution of the prosecution.' Deaver's [plaintiff] challenge is essentially that—a contention that there would be a constitutional defect in the institution of any prosecution growing out of the independent counsel's investigation. By implication, the existence of Rule 12(b)(1) suggests that appellant's constitutional challenge is not to be raised in a preindictment civil injunctive action. This implication is strengthened by the traditional reluctance, which we have discussed, of an equity court to interfere with criminal proceedings. And we think the limited appealability of district court orders denying pretrial

---

**3.** Rule 12(b)(1) provides:
  (b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be

written or oral at the discretion of the judge. The following must be raised prior to trial:

  (1) Defenses and objections based on defects in the institution of the prosecution;

motions in criminal cases makes the implication that Deaver cannot bring this Rule 12(b)(1)-type claim to our court inescapable.

. . . .

Congress has established a comprehensive set of rules governing federal criminal prosecutions—the Federal Rules of Criminal Procedure. These rules provide adequate, although limited, opportunities for defendants to challenge shortcomings in prosecutorial authority. The final judgment rule, moreover, generally prevents defendants from bringing appeals until after conviction. We cannot allow Deaver [plaintiff] to avoid these rules—and thereby encourage a flood of disruptive civil litigation—by bringing his constitutional defense in an independent civil suit. Prospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure.

822 F.2d at 69–71.

In *North v. Walsh*, 656 F.Supp. 414, 419–20 (D.D.C.1987), the court observed:

The strong policy against intervening in ongoing criminal investigations also persuades the court to refrain from reviewing plaintiff's substantive claim. Courts have almost never found that an ongoing criminal investigation imposes a sufficient hardship to the person investigated to warrant judicial review prior to his or her indictment. The standard for obtaining any form of injunctive relief is high . . . . but a party who seeks to enjoin a criminal investigation has a particularly heavy burden.

. . . .

The rationale behind the judicial policy against intervening in a criminal investigation is threefold. First, the courts want to protect the public's interest in the fair and expeditious enforcement of the criminal laws. Permitting challenges at the preindictment stage would impede the criminal investigation by 'saddling the grand jury with minitrials and preliminary showings.' . . . Second, the courts seek to balance the defendant's need to assert his rights against the judiciary's interest in conserving its resources. The criminal justice system is structured to provide the criminal defendant ample opportunity to vindicate its rights after he is indicted . . . . Finally principles of comity and separation of powers counsel courts against intervening in a criminal investigation conducted by another branch of government.

■■■ Based on the teachings of the foregoing authorities, the following is clear. An injunction against an ongoing criminal investigation or prosecution is rarely appropriate and the Plaintiffs, as the moving parties, have a heavy burden to obtain such an injunction. The Court must consider the unique role of grand jury investigations in our criminal justice system. Grand jury proceedings have a presumption of regularity. Finally, an adequate remedy in the form of a motion to dismiss any indictment, pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, generally weighs against the issuance of such an injunction.

Applying this law to the facts alleged in this case, the Court declines to issue a preliminary injunction.

As in *Blalock, Deaver,* and *North,* the Court finds it unnecessary and inappropriate to determine the merits of Plaintiffs' substantive constitutional claims. Assuming such claims have merit, Plaintiffs have not carried their "heavy burden" that this is an "extraordinary case." [4]

---

**4.** This Court acknowledges that the *Boggs* Court chose to determine the merits of the plaintiff's claim in declining to issue an injunction. The *Boggs* Court stated:

However, a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.' . . . Threats of criminal prosecution may provide a basis for adjudication. . . . . A plaintiff 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' . . . Indeed, civil actions for declaratory relief against criminal prosecution have become a common method of challenging the constitutionality of federal statutes. Moreover, courts have not hesitated to restrain or enjoin criminal prosecutions where First Amendment rights are at stake.

This Court, based on *Blalock, Deaver,* and *North,* declines to do likewise. The Court also notes that *Boggs* dealt with unique First Amendment claims, unlike this case.

Plaintiffs also have an adequate remedy at law. If indicted, Plaintiffs may challenge the constitutionality of the pedigree provisions of the PDMA and PDA under Rule 12(b)(1). Therefore, injunctive relief is not warranted.

 Moreover, the Court finds that it is not in the public interest to issue an injunction against a criminal investigation, and any eventual prosecution, based on the facts and claims alleged in this case. Such an injunction would damage the grand jury system and inappropriately circumvent the Federal Rules of Criminal Procedure. Balancing the harm to the Plaintiffs against the harm to the public, the balance weighs in favor of the public in this case.[5] It is no doubt extremely unpleasant to be the subject of a criminal investigation. However, Plaintiffs are not suffering any harm not generally placed on persons being investigated.[6]

The Court notes that Plaintiffs are being investigated for other matters in addition to the pedigree issue. Therefore, an injunction against enforcement of PDMA/PDA would not terminate all investigation. Thus, much of the harm complained of will occur even if the injunction is issued.

Accordingly, for these reasons, the Motion For Injunctive Relief is DENIED.

### III. MOTION TO QUASH THE SUBPOENA OF F.H. THOMPKINS

Plaintiffs' Emergency Motion asked the Court, alternatively, to quash the subpoena of F.H. Thompkins until the motion for a preliminary injunction could be heard.

The Court has been advised that F.H. Thompkins' appearance before the Grand Jury has been continued for thirty days because he has retained new counsel. F.H. Thompkins is no longer a party to this case.

5. The Court does not foreclose the possibility of issuing an injunction against a criminal investigation based on different facts, claims, or statutes, For example, extreme prosecutorial conduct motivated by animus against a constitutionally protected right and class may warrant such an injunction. Those questions, however, must be answered when presented and they are not present in this case.

6. Plaintiffs argue that they have lost business, had their reputations damaged and are unable to

The motion for a preliminary injunction has now been heard. Therefore, the Motion To Quash F.H. Thompkins' subpoena is DENIED as moot.

It is so ORDERED.

readily sell Metro Medical Supply, Inc. stock. This is unfortunate, but not "extraordinary" to the criminal process. Plaintiffs also argue that because the law in question is unconstitutionally vague, they are unable to conduct their business without unfair, continuing and prejudicial constitutional risk. The Assistant United States Attorney represented to the Court that the criminal investigation concerns only past conduct and that no presently existing pedigree violations are happening to the best of his knowledge.