**Everett JERNIGAN, Plaintiff,**

**v.**

**The STATE OF MISSISSIPPI, Mike Moore, Attorney General for the State of Mississippi, the United States of America, William Barr, Attorney General for the United States of America, Defendants.**

**Civ. A. No. J92–0363(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 2, 1993.

Michael Knapp, Jackson, MS, for plaintiff.

Robert G. Anderson, U.S. Atty., Jackson, MS, Candice Will, U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant United States of America to dismiss. Plaintiff Everett Jernigan has responded to the motion and the court, having considered the memoranda of authorities submitted by the parties, is of the opinion that the government's motion is well taken and should be granted.

Plaintiff, Everett Jernigan, a resident of Clinton, Mississippi, is the owner of two video poker machines. In June 1992, federal and Mississippi law enforcement officials

---

issued a joint press release announcing their intention to enforce state and federal gambling statutes and to begin seizing video poker machines and similar electronic gambling devices effective July 1, 1992. Anticipating the possible seizure of his machines and prosecution under state and/or federal law for owning, possessing and operating his video poker machines as illegal gambling devices, Jernigan filed in this court a complaint for declaratory and injunctive relief against the State of Mississippi and the United States.[1] Specifically, plaintiff sought a declaratory judgment that his machines are not illegal gambling devices under state or federal gaming laws and an injunction prohibiting law enforcement officials from seizing his machines and from arresting and/or prosecuting him under the guise of enforcing such gaming laws. Contemporaneously with the filing of his complaint, Jernigan moved for entry of a temporary restraining order, and the court, following a July 20, 1992 evidentiary hearing on that motion, denied the requested relief, finding that Jernigan had failed to demonstrate "a potential irremediable constitutional violation of sufficient magnitude to warrant the interference of this court in either state or federal law enforcement."

Under Mississippi law, it is unlawful to possess, own or control certain types of machines which are declared to be "gambling devices." Machines classified as such are subject to seizure and destruction by law enforcement officers. *See* Miss.Code Ann. § 97–33–7; Miss.Code Ann. §§ 97–43–1 *et seq.*[2] Federal statutes further make unlawful the interstate transportation of "gambling devices" and provide for the forfeiture of such devices. *See* 15 U.S.C. §§ 1171–1177.[3] In this action, plaintiff

---

1. Jernigan named as defendants the State of Mississippi and Mike Moore, in his official capacity as Mississippi's Attorney General, and the United States of America and William Barr, Attorney General of the United States.

2. Miss.Code Ann. § 97–33–7 provides in pertinent part:

   (1) It shall be unlawful for any person ... to have in possession, own, control, display, or operate any cane rack, knife rack, artful dodger, punch board, roll down, merchandise wheel, slot machine, pin ball machine, or similar device or devices.... Any slot machine ... which delivers, or is so constructed as that by operation thereof it will deliver to the operator thereof anything of value in varying quantities, in addition to the merchandise received, and any slot machine ... constructed in such manner as that slugs, tokens, coins or similar devices are, or may be, used and delivered to the operator thereof in addition to merchandise of any sort contained in such machine, is hereby declared to be a gambling device, and shall be deemed unlawful under the provisions of this section.

   (2) .... [A]ll such devices are subject to confiscation and destruction, and their possession shall be unlawful, except when in the possession of officers carrying out the provisions of this section. It shall be the duty of all law-enforcing officers to seize and immediately destroy all such machines and devices.

   In addition, Mississippi's Racketeer Influenced and Corrupt Organization Act, Miss.Code Ann. §§ 97–43–1 *et seq.*, includes in its definition of "racketeering activity" the commission of the crimes proscribed by the State's laws on gambling, including Miss.Code Ann. § 97–33–7.

3. Under the Federal Gambling Devices Transportation Act, the term "gambling device" is defined to include:

   (1) any so-called "slot machine" or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

   (2) any other machine or mechanical device (including, but not limited to, roulette wheels and similar devices) designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of application of an element of chance, any money or property....

   15 U.S.C. § 1171. Under 15 U.S.C. § 1172, it is unlawful to "knowingly ... transport any gambling device to any place in a State ... from any place outside of such State ...," but the statute by its terms does not apply "to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this section, or to a place in any subdivision of a state if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section...." Section 1177 provides for the seizure and civil forfeiture of gambling

**690**

does not directly challenge the constitutionality of any of these statutes. Rather, he alleges that his video poker machines are not gambling devices and that as such, his ownership and use of the machines are protected by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Consequently, seizure of the machines by defendants would deprive him of his property without due process of law.[4]

■ As an initial matter, the State of Mississippi contends that this case must be dismissed inasmuch as plaintiff has failed to establish the existence of an actual case or controversy so as to invoke this court's jurisdiction. According to the State, this court is thus without power to grant plaintiff either injunctive or declaratory relief.[5] In the court's opinion, however, plaintiff has demonstrated that the threat of seizure and prosecution "is real and imminent rather than imaginary or speculative." *Pennsylvania Video Operators v. United States*, 731 F.Supp. 717, 718 (W.D.Pa.), aff'd, 919 F.2d 136 (3d Cir.1990) (citing *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The defendants' joint press announcement amounted to an

> unequivocal statement[ ] of [their] intention to enforce [applicable gambling laws] and to institute forfeiture actions and criminal proceedings in the near future. These statements were neither vague nor illusory and therefore plaintiff

---

devices transported interstate unless the receiving state has enacted a law specifically providing for exemption from § 1172.

Further, the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, defines "racketeering activity" under federal law to include "any act or threat involving ... gambling ... which is chargeable under State law and punishable by imprisonment for more than one year."

4. In addition to his claim that his video poker machines are not "gambling devices" within the meaning of the federal gambling statutes, *see supra* n. 3, plaintiff contends that the federal government cannot validly prosecute him under 15 U.S.C. § 1172 since, according to plaintiff, Mississippi has "enacted a law providing for the exemption of [Mississippi] from the provisions of § 1172." Plaintiff points to Miss.Code Ann. § 75–76–59 (Supp.1990), which provides:

> (1) Pursuant to Section 2 of that certain Act of the Congress of the United States entitled "An act to prohibit transportation of gambling devices in interstate and foreign commerce," approved January 2, 1951, being c. 1194, 64 Stat. 1134, and also designated as 15 U.S.C. Sections 1171–1177, the State of Mississippi, acting by and through the duly elected and qualified members of its Legislature, does hereby in this section, and in accordance with and in compliance with the provisions of Section 2 of such Act of Congress, declare and proclaim that it is exempt from the provisions of Section 2 of that certain Act of the Congress of the United States entitled "An act to prohibit transportation of gambling devices in interstate and foreign commerce," approved January 2, 1951, being c. 1194, 64 Stat. 1134.
> (2) All shipments of gambling devices, including slot machines, into this state, the registering and labeling of which has been duly had by the manufacturer or dealer thereof in ac-

cordance with Sections 3 and 4 of that certain Act of the Congress of the United States entitled "An act to prohibit transportation of gambling devices in interstate and foreign commerce," approved January 2, 1951, being c. 1194, 64 Stat. 1134, and also designated as 15 U.S.C. Sections 1171–1177, shall be deemed legal shipments thereof into this state.

The defendants assert that this exemption from the provisions of §§ 1171 through 1177 was intended to be limited to shipments of gaming devices into the areas of Mississippi where gambling had become legal, and most notably, areas of the state in which dockside and cruise ship gambling had become legal. *See* Miss.Code Ann. § 97–33–7(4), (5) (Supp.1990). The language of the statute suggests no such limitation and the statute, as written, purports to establish an across-the-board exemption. Indeed, a clearer pronouncement by the Mississippi Legislature that the provisions of §§ 1171 through 1177 do not apply to shipments of gambling devices into this State can hardly be imagined. The federal defendants argue, though, that the plaintiff engaged in conduct proscribed by 15 U.S.C. § 1172 for a number of years prior to the 1990 enactment of the exemption contained in Miss. Code Ann. § 75–76–59, and that he would therefore still be subject to prosecution under § 1172. The government further contends that even if the plaintiff would not be subject to prosecution and his machines subject to forfeiture under these statutes, he could nevertheless be prosecuted under the federal RICO statutes, 18 U.S.C. §§ 1961 *et seq.*

5. Though the State has not filed a separate motion to dismiss, it has contended throughout this case that dismissal should be ordered on the ground, *inter alia*, that the court is without power to grant the relief plaintiff seeks since plaintiff has not established that there is an actual case or controversy.

satisfies the actual controversy requirement.

*Id.* at 718–19.

■ The State next argues that this action is barred by the doctrine of non-intervention articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in which the Supreme Court refused to enjoin a state criminal prosecution based on "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Id.* at 41, 91 S.Ct. at 749. *See also Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (holding that principles of *Younger* applied to declaratory relief, as well as to injunctive relief). And, citing the "strong policy" in this country against judicial intervention in criminal investigations and proceedings, the United States similarly seeks dismissal of Jernigan's complaint, arguing that Jernigan may challenge the constitutionality of any seizure which may occur or of any criminal proceedings which may be instituted against him in the course of any such forfeiture and/or criminal proceedings, but that he should not be permitted to do so in this action. *See Confiscation Cases,* 74 U.S. (7 Wall) 454, 457, 19 L.Ed. 196 (1869) ("Public prosecutions, until they come before the court to which they are returnable, are within the exclusive direction of the [United States] attorney."); *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) ("[C]ourts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal proceedings."); *North v. Walsh,* 656 F.Supp. 414, 420 (D.D.C.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 765 (1988) ("Courts have almost never found that an ongoing investigation imposes a sufficient hardship on the person investigated to warrant judicial review prior to his or her indictment.").

The *Younger* doctrine of non-intervention in state criminal proceedings would not prevent this court from granting declaratory or injunctive relief if the plaintiff could establish the criteria for such relief. In *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Supreme Court unanimously held that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." *Id.* at 475, 94 S.Ct. at 1223–24. And in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Court indicated that where there is no pending state court proceeding, one who is threatened with prosecution may secure injunctive relief, or at least preliminary injunctive relief, since it would not disrupt any state court proceedings and because there is no available forum in which to raise the constitutional claims. *See also Robinson v. Stovall,* 646 F.2d 1087, 1909 (5th Cir.1981) (citing *Steffel* and *Doran* ) ("A person threatened with, but not yet the subject of, an allegedly illegal arrest and prosecution or other violations of his federal rights may seek appropriate injunctive and declaratory relief without any obstacles from the *Younger* doctrine.").

Nevertheless, though *Younger* and its progeny do not stand as a bar to this court's granting relief to plaintiff against potential seizure and prosecution by the State, this court is of the view that the circumstances presented simply do not warrant the granting of such relief. The *Younger* Court observed that as a matter of equity, the federal courts should not act, "and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.,* 401 U.S. at 43–44, 91 S.Ct. at 750. The Court further observed:

> "*Ex Parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714] ... and following cases have established the doctrine that, when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be

done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this court would not afford adequate protection." [*Fenner v. Boykin*, 271 U.S. 240, 243–44, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926).]

These principles ... 'have been repeatedly followed and reaffirmed in other cases involving threatened prosecutions....

In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is "both great and immediate." *Fenner, supra.*

*Younger*, 401 U.S. at 45–46, 91 S.Ct. at 751 (some citations omitted). *See also Douglas v. City of Jeannette*, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943) (injunctive relief is available only "to prevent irreparable injury which is clear and imminent."); *cf. Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The standard is no less exacting where threatened federal criminal proceedings are at issue. This court noted in its prior opinion in this cause:

The non-interference policy [of *Younger*] is applicable to federal criminal prosecutions as well. *See Pennsylvania*

*Video Operators v. United States*, 731 F.Supp. 717 (W.D.Pa.), *aff'd*, 919 F.2d 136 (3d Cir.1990). However, the principle involved is not respect for the relationship between the federal government and the state, but respect for the actions of separate branches of the federal government. *North v. Walsh*, 656 F.Supp. 414 (D.D.C.1987).

In the case at bar, plaintiff's allegations simply do not satisfy the heavy burden of demonstrating that intervention by this court is warranted. As the court indicated in declining to grant a temporary restraining order in this case, Jernigan claims that he will lose money if state or federal law enforcement officials seize his video poker machines. However, the court did not and does not view this as "a potential irremediable constitutional violation of sufficient magnitude to warrant the interference of this court in either state or federal law enforcement." Injunctive relief would therefore not be appropriate.

In the court's opinion, neither can declaratory relief properly be granted in this proceeding. As indicated *supra*, plaintiff alleges in this action that his due process right to "a hearing, prior to the seizing of [his] equipment or personal property" is threatened to be violated by criminal proceedings. Defendants argue, *inter alia*, that plaintiff has no property interest in his video poker machines and that as a result, his due process rights could not be implicated by any seizure of those machines. Jernigan does not dispute that the ownership, possession, control or transportation of machines such as his could be declared illegal by the state legislature or by Congress as a valid exercise of government police powers. Nor does he dispute that he would not have a property interest in the machines if they had been declared illegal by these statutes.[6] His claim appears to be

---

6. Miss.Code Ann. § 97–33–7(2), in fact, explicitly provides that "[n]o property right shall exist in any person ... in any or all of the devices described herein that are not exempted ... and all such devices are hereby declared to be at all times subject to confiscation and destruction, and their possession shall be unlawful...." And it has been held that a statute which pro-

vides for the summary forfeiture and destruction of gambling devices " 'is a valid exercise of the police power of the state and is not in conflict with the Constitution, as depriving the owner of his property without due process of law.' " *Clark v. Holden*, 191 Miss. 7, 2 So.2d 570 (1941) (quoting *State v. Kizer*, 164 S.C. 383, 162 S.E. 444, 449 (1932)). *See also Holliday v. Gov-*

simply that his machines are not, in fact, "gambling devices" within the meaning of any of the subject statutes. He contends that consequently, he does have a property interest in them such that defendants could not seize his machines without violating his due process rights. In other words, what Jernigan seeks is an adjudication that his video poker machines are not "gambling devices" under federal law or "slot machine[s] ... or similar ... devices" under state law; and, on the basis that his ownership of the machines is not, in fact, illegal under these statutes, he wants an injunction against defendants' seizing his machines or prosecuting him for his ownership of these machines. It is apparent from the record in this case that the question whether a particular machine is a "gambling device" depends, under either state or federal law, on the various features of the machine. In a case quite similar to that at bar, a Pennsylvania District Court refused to grant declaratory relief, explaining that the vague and conclusory allegations in plaintiff's complaint concerning an alleged constitutional violation were

> further compounded by the prospect of extensive factual battles over the various types and models of video poker machines.... [C]onsideration of the various characteristics of each game and machine is the core of analysis under the statute. A declaratory judgment action to determine criminal liability in anticipation of criminal proceedings is appropriate when·the declaration will settle the question presented and terminate the entire controversy. The courts are to avoid using declaratory judgment to make abstract determinations or to try the controversy in piecemeal fashion....
> If plaintiff's challenging is to the constitutionality of the Gambling Devices Act *as applied,* we cannot make such a declaration because the answer depends on the characteristics of each machine.

*ernor of South Carolina,* 78 F.Supp. 918 (W.D.S.C.), *aff'd,* 335 U.S. 803, 69 S.Ct. 56, 93 L.Ed. 360 (1948) (where plaintiff sought to enjoin enforcement of statute making certain machines illegal gambling devices and subject to seizure and destruction, court found no due process right); *cf. Lawton v. Steele,* 152 U.S.

Gradations of fact may well make a difference in criminal liability or forfeiture. It is simply impossible for this Court to anticipate all possible combinations of characteristics in video poker machines and to issue a declaratory judgment which will settle this controversy. This matter is better left to individual criminal proceedings where the facts may be developed and the statute applied on a case by case basis.

*Pennsylvania Video Operators,* 731 F.Supp. at 719. To entertain this action for declaratory relief by Jernigan would be to invite precisely this kind of piecemeal adjudication denounced by the court in *Pennsylvania Video Operators.* This court, as did that court, declines to issue that invitation.

In conclusion, the court is persuaded that the general policy of non-interference with state and federal prosecutions militates against the court's exercising its jurisdiction in this cause. The court is aware that as there has been no seizure of Jernigan's property and as there is no prosecution currently pending against him, the court is not entirely foreclosed from entertaining this action. However, the court is not persuaded by the issues and allegations arising in this case that it should exercise its jurisdiction. Injunctive relief is clearly not required in the premises as there is no allegation of "great and immediate" irreparable injury. And the fact that a declaratory judgment by this court could not definitively resolve the issue of what machines are covered under the various statutes at hand counsels against the court's exercising its jurisdiction. Accordingly, it is ordered that the motion of the United States to dismiss the complaint is granted as is the request for dismissal by the State of Mississippi.

133, 14 S.Ct. 499, 38 L.Ed. 385 (1894) (legislature may declare that which is perfectly innocent in itself to be unlawful and may annex to the prohibited act all the incidents of a criminal offense, including the destruction of property denounced by it as a public nuisance).

694

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.