PRESTON GLOVE COMPANY, INC.,
and Slate Springs, Plaintiffs,

v.

Lloyd BENTSEN, Secretary of Treasury of
the United States of America, and Janet
Reno, United States Attorney, Defendants.

No. 1:94CV12–S–D.

United States District Court,
N.D. Mississippi, E.D.

March 10, 1994.

George L. Lucas, Jackson, MS, for plaintiffs.

Alfred E. Moreton, III, U.S. Atty., Ralph M. Dean, Asst. U.S. Atty., Oxford, MS, for defendants.

### *OPINION*

SENTER, District Judge.

This cause is before the court on the complaint for declaratory judgment and motion for preliminary injunction filed by the plaintiffs. The court heard oral argument on Friday, February 18, 1994, at which time the parties announced that they had agreed to an expedited declaratory judgment and that the plaintiffs had agreed to dismiss their motion for injunctive relief. The court's opinion addresses the question whether 18 U.S.C. § 1761 prohibits the interstate transportation of goods manufactured in a penal or reformatory institution.

### *Facts*

The plaintiffs are textile manufacturers incorporated under the laws of the state of Mississippi with manufacturing operations in Noxapater and other locations within the State of Mississippi. Magnolia State Enterprises is a quasi-governmental business incorporated pursuant to the Mississippi Prison Industries Act of 1990. On December 17, 1991, Preston Glove entered into a contract with Magnolia State Enterprises for the use of Magnolia's facilities and inmate laborers at Parchman and Greene County, Mississippi. Under the contract, Preston Glove provided

the materials and paid Magnolia $1.86 per dozen gloves completed.

On December 9, 1993, agents for the United States of America conducted a search of Magnolia's operation at Parchman, Mississippi. Certain items were seized from the premises for possible violation of 19 U.S.C. § 1304 (mislabeling foreign-made goods) and 18 U.S.C. § 1761. The plaintiffs allege that the government's actions pursuant to a possible violation under 18 U.S.C. § 1761 have interrupted the contractual relationship between Preston Glove and Magnolia. The plaintiffs maintain that the defendants are misinterpreting the statute, and that the interstate shipping of gloves manufactured at the Parchman and Greene County facilities falls within the exception clause of § 1761.

### Actual Case or Controversy

■ In *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Supreme Court held that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." *Id.* 415 U.S. at 475, 94 S.Ct. at 1223; *see Jernigan v. State of Mississippi*, 812 F.Supp. 688, 691 (S.D.Miss.1993). A plaintiff need not undergo an actual prosecution to have standing to challenge a statute. *City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); *International Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 817 (5th Cir.1979). Plaintiff need only demonstrate a credible threat of prosecution under the challenged statute. *Babbitt v. United Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979); *Veterans Peace Convoy, Inc. v. Schultz*, 722 F.Supp. 1425, 1429 (S.D.Tex.1988); *see also Robinson v. Stovall*, 646 F.2d 1087, 1090 (5th Cir.1981) (citing *Steffel*) ("A person threatened with, but not yet the subject of, an allegedly illegal arrest and prosecution or other violations of his federal rights may seek appropriate injunctive and declaratory relief without any obstacles from the *Younger* doctrine.").

A declaratory judgment action to determine criminal liability in anticipation of criminal proceedings is appropriate when the declaration will settle the question presented and terminate the entire controversy. The courts are to avoid using declaratory judgment to make abstract determinations or to try the controversy in piecemeal fashion. *Pennsylvania Video Operators v. United States*, 731 F.Supp. 717, 719 (W.D.Pa.1990) (citing *Maryland Casualty Co. v. Rosen*, 445 F.2d 1012 (2d Cir.1971)). The court is not sitting to decide the guilt or innocence of the plaintiffs, but to give a fair interpretation of the applicable criminal statute. By the government's investigation and its refusal to stipulate that it will not seek an indictment against the plaintiffs, it is clear that the court has jurisdiction to issue a declaratory judgment as to the meaning of 18 U.S.C. § 1761.

### Legal Conclusion

Title 18 U.S.C. § 1761, provides:

(a) Whoever knowingly transports in interstate commerce or from any foreign country into the United States any goods, wares, or merchandise manufactured, produced, or mined, wholly or in part by convicts or prisoners, except convicts or prisoners on parole, supervised release, or probation, or in any penal or reformatory institution, shall be fined not more than $50,000 or imprisoned not more than two years, or both.

The United States Supreme Court in *Kentucky Whip & Collar Co. v. Illinois C.R. Co.*, 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270 (1937), addressed the constitutionality of this statute. Known as the Ashurst–Sumners Act, the Court found the statute to be a proper exercise of authority bestowed on Congress by the Commerce Clause of the United States Constitution. In dictum the Court stated:

The Act makes it unlawful knowingly to transport in interstate or foreign commerce goods made by convict labor into any State where the goods are intended to be received, possessed, sold, or used in violation of its laws.

*Id.* 299 U.S. at 343, 57 S.Ct. at 278. There has been little judicial writing devoted to the Ashurst–Sumners Act. Those opinions which have mentioned 18 U.S.C. § 1761 do not address the issue before the court.[1] Clearly, the statute is designed to prevent the use of prison laborers in order to avoid high labor costs. In fact, subsection (c) allows the interstate transportation of inmate manufactured goods after certain fair labor laws have been met. Under subsection (c) there would not be an unfair competition problem.

Thus, the purpose of the statute is understandable, but how the statute, as written, seeks to achieve that purpose is unclear. The plaintiffs have artfully and correctly shown the court that grammatically the exception clause seems to include language which, if taken as excepted, would counteract the statute's purpose. The plaintiffs argue that the language the defendants are relying on in 18 U.S.C. § 1761 falls within the exception clause and is not within the statute's prohibition. The plaintiffs argue that those laborers exempted from the prohibition are "convict or prisoners on parole, supervised release, or probation, or in any penal or reformatory institution." This interpretation would allow the interstate transportation of goods made by those excepted convict laborers, but prohibit interstate transportation of goods made by all other convicts or prisoners. The defendants argue that the exception clause only extends to convicts or prisoners who are on parole, supervised release, or probation. The defendants maintain that the language "or in any penal or reformatory institution" prohibits interstate transportation of goods manufactured at those locations in conjunction with goods made by convicts or prisoners. There may be other locations besides penal or reformatory institutions where convicts or prisoners can manufacture goods. Additionally, foreign penal or reformatory institution laborers may not be those whom we would traditionally consider convicts or prisoners.

"[T]he meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the court is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). When interpreting a statute, the court's "task is to give effect to the will of Congress, and where its will has been expressed in reasonable plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). "Where, as here resolution of a question of Federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *see Dibidale of Louisiana, Inc. v. American Bank & Trust Co.,* 916 F.2d 300, 305 (5th Cir.1990) ("Where the statute's plain language provides no clear answer we may look to legislative history for guidance."), *modified on other grounds,* 941 F.2d 308 (5th Cir.1991). "[A] law susceptible of different meanings must be interpreted as having the meaning that best conforms to the purpose of the law." *Merchants Nat. Bank v. Smith, Hinchman & Grylls,* 876 F.2d 1202, 1208 (5th Cir.1989). "[C]ourts should reject interpretations which lead to unreasonable results in favor of those which produce reasonable results." *Birdwell v. Skeen,* 983 F.2d 1332, 1337 (5th Cir.1993); *see Commissioner v. Asphalt Products Co., Inc.,* 482 U.S. 117, 121, 107 S.Ct. 2275, 2277, 96 L.Ed.2d 97 (1987) ("Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what

---

1. The Seventh Circuit in *Vanskike v. Peters,* 974 F.2d 806 (7th Cir.1992), stated:

   The Ashurst–Sumners Act, 18 U.S.C. §§ 1761–62, penalizes the knowing transportation of prison-made goods in commerce and was specifically intended to combat unfair competition.

   *Id.* at 811 (citing *Kentucky Whip* ). The Fourth Circuit, also citing *Kentucky Whip,* concluded that the "Ashurst–Sumners Act criminalizes the transport of prison-made goods in interstate commerce in precisely those situations in which prison labor threatens fair competition." *Harker v. State Use Industries,* 990 F.2d 131, 134 (4th Cir.1993).

Congress has plainly and intentionally provided.").

 For the court to interpret 18 U.S.C. § 1761 as argued by the plaintiffs would be unreasonable and thwart the purpose and congressional intent of the statute. This ambiguity allows the court to view the statute's legislative history. When originally enacted on July 24, 1935, the exception portion of the law appeared in parenthesis.

> That it shall be unlawful for any person knowingly to transport or cause to be transported, in any manner or by any means whatsoever, or aid or assist in obtaining transportation for or in transporting any goods, wares, and merchandise manufactured, produced, or mined wholly or in part by convicts or prisoners (except convicts or prisoners on parole or probation), or in any penal or reformatory institution, . . .

Chapter 412 (emphasis added). In 1940, when Congress amended the statute, the exception language remained within parentheses as it appears above. Sometime during the intervening years, the parentheses were replaced by commas. Under this light, the plaintiffs' argument is incorrect. The "in any penal or reformatory institution, . . ." phrase is part of the prohibition, *not* the exception. Accordingly, 18 U.S.C. § 1761 is interpreted to prohibit the interstate transportation of goods, not only made by convicts or prisoners, but also, those manufactured in penal or reformatory institutions.

An order in accordance with this opinion shall be issued.

### DECLARATORY JUDGMENT AND FINAL ORDER OF DISMISSAL

Pursuant to an opinion issued contemporaneously herewith, IT IS DECLARED AND ADJUDGED:

That 18 U.S.C. § 1761 is interpreted to prohibit the interstate transportation of goods, not only made by convicts or prisoners, but also, those manufactured in penal or reformatory institutions.

Accordingly, this cause is herewith dismissed with prejudice.

SO DECLARED.