Anthony CAROLLO, Plaintiff,

v.

Alexis M. HERMAN, Secretary of Labor, and United States Department of Labor, Defendants.

No. 00–CV–346 (JG).

United States District Court,
E.D. New York.

Feb. 18, 2000.

Scott P. Trivella, Trivella & Forte, LLP, Valhalla, NY, for plaintiff.

Loretta E. Lynch, United States Attorney, Brooklyn, NY, by Vincent Lipari, Assistant United States Attorney.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

Plaintiff Anthony Carollo seeks a declaration that he is exempt from the statutory bar on his serving as a union official because of a prior criminal conviction or, in

the alternative, a preliminary injunction to that effect while the Court considers his application. For the reasons discussed below, the request for a declaration is held in abeyance pending a hearing on the subject and the request for a preliminary injunction is denied.

## BACKGROUND

On April 7, 1991, Anthony Carollo and some friends were at the Oyone Tavern in Staten Island when they began arguing with another group at the bar. (Declaration of Ralph Gerchak, New York District Director of Enforcement for the Office of Labor–Management Standards, U.S. Dept. of Labor ("Gerchak Declaration"), ¶ 7.) The dispute continued as the two groups moved outside the bar, and John Campotella, the bar's bouncer, attempted to intervene. (*Id.*) Carollo, who was on probation at the time for a 1987 conviction for assault in the first degree, retrieved a handgun from his car and shot Campotella once in each leg. (*Id.*, ¶¶ 7, 10.) Campotella survived, but was hospitalized for three weeks and underwent a number of surgeries. (*Id.*, ¶ 7.)

Carollo fled the scene of the shooting, and he was not arrested until April 4, 1992. (*Id.*; Affidavit of Anthony Carollo, ¶ 6.) Carollo pleaded guilty to reckless endangerment in the first degree on October 9, 1992 and was sentenced to one to three years in prison. (Gerchak Declaration, ¶¶ 8–9.) He was released from prison on September 8, 1993. (*Id.*, ¶ 9.)

In December 1995, Carollo went to work for the New York City District Council of Carpenters Benefit Funds (the "Benefit Funds"). (Carollo Declaration, ¶ 4.) As of January 17, 2000, Carollo was working in the accounts receivable department, where he sought collections from delinquent employers. (*Id.*, ¶ 4.)

In September 1999, union members elected Carollo to the position of delegate to the New York City District Council of Carpenters Union (the "Union"). (*Id.*, ¶ 5.) In this unpaid position, Carollo "participate[s] in votes on issues affecting the livelihood of the [union] membership." (*Id.*, ¶ 5.)

On November 30, 1999, Ralph Gerchak, New York district director of enforcement for the United States Department of Labor's Office of Labor–Management Standards, wrote to Carollo informing him that because of his 1992 conviction federal law prohibited him from assuming a leadership position with a labor union. (Gerchak Declaration, Exhibit A (citing the Labor–Management Reporting and Disclosure Act, § 504, 29 U.S.C. § 504).) Gerchak explained that the prohibition lasted for 13 years from the end of any imprisonment resulting from the conviction and that Carollo could seek an exemption in federal court. Finally, Gerchak advised Carollo that a willful violation of § 504 was a felony.

On January 18, 2000, Carollo filed an order to show cause in this Court seeking a declaratory judgment stating he is exempt from the § 504 prohibition on the ground that he has been rehabilitated. He also sought a temporary restraining order enjoining Department of Labor employees from "interfering with [Carollo's] current position as a delegate with the New York City District Council of Carpenters." I declined to issue the restraining order, but scheduled argument for January 18, 2000. (The argument was subsequently adjourned until February 18, 2000.)

On January 27, 2000, Carollo was suspended without pay from his position at the Benefit Funds. In a memorandum to Carollo, attorney Brian O'Dwyer explained that the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1111, included statutory bars on employment with benefit funds that mirror § 504 of the LMRDA. (Reply Affirmation of Scott P. Trivella, Exhibit A.) The memorandum said that Carollo would be "considered for employment once again" if he obtained a court-ordered exemption from disability. (*Id.*)

On February 11, 2000, Carollo renewed his request for a temporary restraining order.

### DISCUSSION

#### A. Statutory Background

The Labor–Management Reporting and Disclosure Act ("LMRDA") prohibits any individual convicted of an enumerated offense from serving as, *inter alia*, an officer, director, executive board member, or employee of a labor organization.[1] *See* LMRDA § 504(a), 29 U.S.C. § 504(a). Carollo does not contest that (i) his conviction for reckless endangerment is covered by this provision; or (ii) the union office to which he was elected is likewise covered.

The prohibition in § 504 generally runs for thirteen years, as measured from the later of the date of conviction or the end of a period of incarceration. *See id.* Therefore, in Carollo's case, the prohibition would be lifted automatically on September 8, 2006. However, the statute provides several means of early relief from the bar. The provision invoked by Carollo allows an individual with a state conviction to seek an order of exemption from the federal district court for the district in which the offense was committed. *See id.*

In considering such an application, a district court is directed to follow any applicable sentencing guideline or policy statement and to determine whether the applicant's holding of a covered union position "would ... be contrary to the purposes" of the LMRDA. *Id.* That purpose is to ensure that labor and management officials "adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations." LMRDA, § 2(a), 29 U.S.C. § 401(a); *see also id.* § 2(c), 29 U.S.C. § 401(c) ("The Congress, therefore, further finds and declares that the enactment of this chapter is necessary to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act...."); *Nass v. Local 348, Warehouse Production, Sales and Services Employees Union*, 503 F.Supp. 217, 220 (E.D.N.Y.1980) ("[I]n enacting § 504 Congress sought to eliminate the intolerable and corrupt conditions which prevailed throughout segments of organized labor during the 1950's. The legislators therefore provided safeguards which they believed would prevent irresponsible and unscrupulous persons from gaining control of union government.") (quoting *Hodgson v. Chain Serv. Restaurant*, 355 F.Supp. 180 (S.D.N.Y.1973) (internal quotation marks and alterations omitted)), *aff'd*, 657 F.2d 264 (2d Cir.1981). The applicable policy statement in the United States Sentencing Guideline Manual states:

> [R]elief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.

U.S.S.G. § 5J1.1 (1999). Prior to declaring an individual exempt from the § 504 prohibition, the district court must hold a hearing and provide notice to the Secretary of Labor and to state and federal prosecutors in the relevant geographic area. LMRDA § 504(a), 29 U.S.C. § 504(a).

For those whose disqualifying convictions occurred before November 1, 1987, petitions for exemptions are made to the United States Parole Commission (the "Commission"), not the district court. *See* U.S.S.G. § 5J1.1; *see also United States v. Biscardi*, 885 F.Supp. 115 (E.D.Pa.1995). There are a number of regulations governing the Commission's consideration of such

---

**1.** Violations of § 504 are punishable by a fine of up to $10,000 and a term of imprisonment of up to five years. LMRDA § 504(b), 29 U.S.C. § 504(b).

petitions. Although these regulations are not directly applicable in this proceeding, the Secretary argues that they are instructive, so I will briefly describe them here.

An individual seeking a "Certification of Exemption" from the Commission must submit a sworn application including, *inter alia*, a list of disqualifying convictions; a description of the position for which a certificate is sought; and a "full explanation of the reasons or grounds relied upon to establish that the applicant's service in the office or employment for which a Certificate of Exemption is sought would not be contrary to the purposes of the applicable Act." 28 C.F.R. § 4.3. In addition, the applicant is required to submit a list of all felony and misdemeanor arrests and convictions; a statement as to whether he has ever been on probation or parole; a description of positions he has held with labor organizations or employee benefit plans; and detailed financial information. *See id.* § 4.4. The applicant must also submit six letters regarding his character and reputation. *See id.* § 4.5. Those letters may not come from relatives, prospective employers, or anyone associated with a labor organization or employee benefit plan. *See id.*

The Commission will hold a hearing on applications (unless all parties agree to waive it), at which the applicant is required to testify. *See id.* §§ 4.10, 4.11(a). Other witnesses may appear if the Commission, in its discretion, allows it. *See id.* § 4.11(c). The applicant has a right to cross-examine any witnesses testifying against him; the Secretary and any prosecutor opposing the application may also cross-examine witnesses and present evidence. *See id.* § 4.11(b). If, after these proceedings, the Commission issues a Certificate of Exemption, it will "extend only to the stated employment with the prospective employer named in the application." *See id.* § 4.15.

B. *The Procedure to Be Followed in This Case*

Carollo seeks an immediate declaration from the Court based on the current record. I refuse the request for several reasons. First, although oral argument was held on the plaintiff's order to show cause, no hearing has been held within the contemplation of § 504. Moreover, the plaintiff did not request, and the Court did not provide, the statutorily-required notice to the District Attorney for Richmond County. *See* LMDRA § 504, 29 U.S.C. § 504. Second, the plaintiff has not come forward with sufficient information for me to make the required determination. Put another way, if he chooses to rely on the current record in his effort to "clear[ly] demonstrat[e]" his rehabilitation and trustworthiness to hold the position of union delegate, his application will be denied.

I have scheduled a hearing for April 20, 2000, at 2 p.m. I will provide notice to the District Attorney for Richmond County.[2] So that the parties know what to expect, I will briefly describe how I plan to proceed at the hearing.

The government argues, and I agree, that the Parole Commission's regulations are instructive. However, I will not go as far as the government suggests and require Carollo to complete an application fitting the specifications of the Parole Commission's regulations and then submit it to the Secretary for consideration. The Court, not the Secretary, is vested with the statutory responsibility of making this determination.

Generally, I will follow the procedures applicable to the resolution of disputed factors at sentencings. *See* U.S.S.G. § 6A1.3. Carollo, who will bear the burden of persuasion, will make the kind of evidentiary presentation that he believes will allow him to carry that burden. He may

---

**2.** This memorandum and order will serve as notice to the other required recipients: the Secretary of Labor, who is the defendant here, and the United States Attorney for the Eastern District of New York, who is counsel to the Secretary.

offer live testimony, affidavits, or both. Union and Benefit Funds witnesses are not incompetent (as the government argues they should be, in accord with 28 C.F.R. § 4.5), but their testimony may deserve less weight than other witnesses. The Secretary (and the District Attorney for Richmond County, should he choose to participate) will also have an opportunity to offer witness testimony and/or documentary evidence.[3] To the extent live testimony is offered and permitted, each side will of course have an opportunity to cross-examine the other's witnesses.

Carollo and the Secretary are directed to provide each other with witness lists and copies of all exhibits on or before April 13, 2000, unless I direct otherwise.[4] The witness list (copies of which should be provided to the Court) shall include a brief description of each witness's expected testimony.

C. *The Preliminary Injunction Application*

In his order to show cause, Carollo requested a temporary restraining order, which I denied. In his reply papers, he has renewed the request. The order he requests would state that the defendants are "enjoined and restrained from interfering in any way with the rights of the Plaintiff in his capacity as a delegate of the New York City District Council of Carpenters or any other labor organization [or] with respect to his employment at the New York City District Council of Carpenters Fringe Benefit Fund." Since the defendants have had notice and an opportunity to respond to Carollo's request, I will deem his request as one seeking a preliminary injunction, rather than a temporary restraining order. *See* Fed.R.Civ.P. 65(a). The request is denied.

■ A party seeking a preliminary injunction must establish that "1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Statharos v. New York City Taxi & Limousine Comm'n,* 198 F.3d 317, 321 (2d Cir.1999) (quoting *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir.1999)). However, when a party seeks an injunction "to prevent government action taken pursuant to statutory authority, which is presumed to be in the public interest, only the likelihood of success standard applies." *Id.* (quoting *Molloy v. Metro. Transp. Auth.,* 94 F.3d 808, 811 (2d Cir.1996)) (internal quotation marks omitted).

■ Carollo's application presents several potential problems, including the following. First, the centerpiece of Carollo's claim of irreparable harm is that he has lost his job at the Benefit Funds, and the Benefit Funds is not a party. There is no

---

**3.** The Secretary has asked for 90 days "to investigate and report back to the court." Specifically, the Secretary wishes to investigate "(1) the character and gravity of the offense; (2) the nature of the position sought (including the requirements of such position and the potential influence upon others); and (3) the extent that petitioner is sufficiently rehabilitated so as to adhere to the highest standards of responsibility and ethical conduct sought to be fostered by ... LMRDA." (Defendants' Memorandum of Law in Opposition to Petitioner's Application for Exemption from the § 504 Disability, at 14–15 (internal quotation marks omitted).) Regarding the last subject, the Secretary plans to, *inter alia,* examine credit reports, conduct a debtor judgment search, and interview Carollo's neighbors and associates.

The Secretary may conduct whatever investigation she wants to conduct. However, her role is not to "report back to the court"—she is a party, not an arm of the Court—except to indicate whether she will continue to oppose Carollo's application at the April 20 hearing.

I see 90 days as excessive; I have therefore scheduled the hearing for approximately 60 days.

**4.** I will also direct the district attorney for Richmond County to do the same, should he choose to participate.

reason to believe that relief directed to the defendants here will have any effect on Carollo's loss of employment. Second, to the extent Carollo seeks injunctive relief against the government, he seeks an order preventing it from enforcing § 504. But § 504 is a criminal statute; the only means of enforcing it is through prosecution under § 504(b). *See United States v. Jalas,* 409 F.2d 358, 360 (7th Cir.1969) ("[T]he sole remedy for the complained-of wrong is criminal prosecution."). Therefore, Carollo is effectively seeking an injunction against criminal prosecution, an exceedingly difficult remedy to obtain because of separation of powers concerns. *See La-Rouche v. Webster,* 566 F.Supp. 415, 417 (S.D.N.Y.1983) ("The constitutional separation of powers prevents the courts from interfering with the exercise of prosecutorial discretion except under the rarest of circumstances."). Moreover, he has not named any official at the Department of Justice, which initiates criminal prosecutions, as a defendant. Third, and dispositive here, is the requirement that the plaintiff show irreparable harm. He alleges that his suspension without pay and loss of benefits meets the standard. I will assume without deciding that he has stated a sufficient injury; he still fails to show irreparable injury because of his delay in seeking relief. *See Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action."). The urgency of Carollo's application is entirely of his own making. He could have sought a § 504 exemption before standing for election as a union delegate in September 1999 or before going to work for the Benefit Funds in December 1995. That he waited to bring this application until he was found out disentitles him to the extraordinary equitable remedy he seeks.

*CONCLUSION*

The plaintiff's request for a preliminary injunction is denied. A hearing will be held on April 20, 2000, as described in this memorandum.

So Ordered.