Francisco CLAUDIO, Petitioner,

Local 813, International Brotherhood of Teamsters, Chauffeurs, Warehouse-men, and Helpers of America, Peti-tioner–Intervenor,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 01 Civ. 1861(DC).

United States District Court,
S.D. New York.

April 5, 2001.

Roger J. Bernstein, New York, NY (Benjamin Suess, of counsel), for petitioner.

Eisner & Hubbard, P.C., New York, NY by Eugene G. Eisner, for Petitioner–Intervenor.

Mary Jo White, United States Attorney for the Southern District of New York New York, NY by Michael M. Krauss, Sarah S. Normand, Assistant United States Attorneys, for Respondent.

### *MEMORANDUM DECISION*

CHIN, District Judge.

In 1991, when he was 23 years old, petitioner Francisco Claudio pled guilty to a misdemeanor charge of possession of narcotics. A year later, he pled guilty to a felony charge of robbery in the third degree, following an altercation with a neighbor who had been harassing his wife. He served eight months of a one-year prison sentence and was released on April 13, 1993. Since then, he apparently has led a productive life.

Because of his convictions, Claudio is disqualified by law from being employed in certain positions by any labor organization. Claudio now petitions this Court for an exemption from the statutory bar so that he may work as a business agent for petitioner-intervenor Local 813, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (the "Union"). The Union joins in the petition.[1]

Claudio and the Union move for a preliminary injunction permitting him to work for the Union pending a hearing and decision on the petition for an exemption. Notice of the motion, which was brought on by order to show cause, was given to respondent United States Department of Labor (the "Government"). Notice was also given to the Bronx District Attorney's Office, as Claudio was convicted in Bronx County. Although the Government has not yet determined whether it will oppose the petition, it does oppose the granting of any preliminary relief.[2]

I held an evidentiary hearing on the preliminary injunction motion on March 27, 2001. The president of the Union, Claudio, and his wife testified. For the reasons that follow, the motion for a preliminary injunction is granted. The following constitute my findings of fact and conclusions of law.

### *BACKGROUND*

**A. *The Facts***

**1. *Claudio***

Claudio was born in the Bronx in 1968. His father died in 1981, and Claudio was

---

**1.** I orally granted the Union leave to intervene on March 27, 2001. The caption of this action is hereby modified to read as set forth above.

**2.** The Bronx District Attorney's Office has not made a formal appearance in the case, but it

has advised the Court that it has provided relevant portions of the file pertaining to Claudio's 1992 conviction to the U.S. Attorney's Office. It is in the process of locating the file for the 1991 conviction.

raised by his mother in the Hunts Point section of the Bronx. He dropped out of high school after completing the eleventh grade. He held a variety of jobs in the Bronx, including positions in shoe sales, automobile repair, welding, and other metal work.

In 1991, Claudio pled guilty to criminal possession of a controlled substance in the seventh degree, a misdemeanor violation of New York Penal Law § 220.03. He was sentenced to a prison term of thirty days.

In 1992, Claudio pled guilty to robbery in the third degree, a felony violation of New York Penal Law § 160.05. He was sentenced to one year in prison. He was involved in an altercation with a neighbor—an "older gentleman, late 40s"—who had been verbally harassing his wife. During the struggle, Claudio ripped a chain off the gentleman's neck. He pled guilty to third degree robbery pursuant to a plea bargain.

Claudio was released from prison on April 13, 1993, after serving eight months of his sentence. Just two days later, he obtained a job with Bronx County Rubbish, a non-unionized company, working on a garbage collection truck. He stayed with that company (and a successor firm) until late 1995, when he took a similar job at Vigliotti & Sons ("Vigliotti"). Because Vigliotti was unionized, he joined the Union. Vigliotti was taken over by USA Waste, which in turn was taken over by Waste Management Corp. ("Waste Management") in 1997.

Claudio became an alternate (or assistant) shop steward for the Union and was responsible for 140 members. He represented members who had employment problems, such as pay and benefits issues. He accompanied members to hearings when they were challenging suspensions or other disciplinary actions. He also served on the Union's negotiating committee and participated in contract negotiations.

In August 2000, Claudio was asked by the Union to become its business agent in the Bronx. He resigned from his job with Waste Management and became the Union's business agent, working longer hours for lower pay. He was interviewed by Sylvester Needham, the president of the Union; Needham was not aware of the statutory bar against the hiring of individuals with convictions and thus he did not ask Claudio about his prior convictions. (Tr. at 29–30).

Claudio did an excellent job for the Union. He earned the respect and trust of the members, particularly the Hispanic workers, because he was bilingual, he had extensive experience in the sanitation industry (including at Waste Management), and he was reliable and effective. At the end of February or the first day of March 2001, Needham learned that Claudio was disqualified from working for the Union because of his convictions; Claudio's employment was immediately terminated, *i.e.,* on March 2, 2001. (Tr. at 20).

Claudio has been married for some thirteen years. He and his wife have five children together (ages four, six, eight, eleven, and fourteen) and his wife's daughter (age twenty-three) is part of the family as well. Claudio and his family now live in a "better" part of the Bronx and attend church on a regular basis. In the words of his wife, Claudio is now "a wonderful father, husband," who "dedicates" himself to his job as well as to his wife and children. (Tr. at 69). With the exception of some motor vehicles difficulties, including driving with a suspended license, Claudio has had no encounters with the law since he was released from prison in 1993, nor has he been involved in any physical altercations since the incident with the neighbor. (Tr. at 63–64).

## 2. *The Union*

The Union represents approximately 4,000 employees in the New York metropolitan area. (Tr. at 37). Approximately 60% are in the private sanitation industry. (Tr. at 25). The Union also represents employees in the paper, funeral, rental car, and poultry industries. (Tr. at 44).

Waste Management is the largest employer in the private sanitation industry in New York, with locations in all five boroughs as well as Westchester and Long Island. The Union's contract negotiations with Waste Management in particular are critical, because the remainder of the sanitation companies follow Waste Management's lead. Some 65% of Waste Management's employees are Hispanic. (Tr. at 19).

The Union is at a critical juncture in its existence, as it has been operating under a trusteeship for some eight years. In 1993, the Union agreed to be supervised by court-appointed monitors as part of a settlement of a civil racketeering case brought against it by the Government in the Eastern District of New York. The Union was placed under a trusteeship and an investigative officer was appointed to investigate allegations of corruption.

In April 2000, the district court approved a consent order providing for the first set of direct elections of union officers since the imposition of the trusteeship. In August 2000, the members elected new officers, including Needham as president.

The transition has resulted in "turmoil" and the Union has a great deal of work ahead of it. (Tr. at 17–23). Certain contracts in the private sanitation area had expired in December 1999; many of these expired contracts still had not been renegotiated or ratified when the new administration of the Union took over. (Tr. at 17). The contract in Nassau and Suffolk counties had expired in August 2000 but was not yet being renegotiated. There was also a backlog of grievances, arbitrations, and other such matters.

Moreover, although the Union has had as many as fourteen business agents in the past, it employs only six business agents now, none of whom speak Spanish. (Tr. at 18, 30–31). The Union currently has a Spanish-speaking organizer who has assumed some of the duties of a business agent, but she is covering shops outside the sanitation industry as well, including shops in the rental car and cemetery industries, which employ a high percentage of Hispanic workers. (Tr. at 26).

Because of his language abilities and his rapport with the members, Claudio provided critical assistance to the Union while he served as business agent from August 2000 through March 2, 2001. In particular, Claudio proved effective with the workers at Waste Management. After he was discharged, problems arose. Workers were unhappy with certain actions taken by management, and a work stoppage occurred. (Tr. at 21–22). The Union is concerned that its members may seek to "deauthorize" the Union, and if the Union loses Waste Management, as the leading shop in the sanitation industry, "[t]he local would fall apart." (Tr. at 24–25).

In the last three or four weeks, the Union has attempted to find someone who is bilingual to replace Claudio. It has spoken to business agents, shop stewards, and other members from various locations, but no applications have come forward. The Union has been unable to find anyone who is bilingual with experience in the sanitation industry who has been willing to move to the business agent position; when a member shifts from a job in a shop to a position on the staff of the Union, he or she usually takes a pay cut. Shop stewards make overtime, while business agents are not paid overtime, even though they

work long hours and weekends. (Tr. at 32, 42). When he was a business agent, for example, Claudio worked 13–14 hour days as well as Saturdays. (Tr. at 47).

### B. Prior Proceedings

This petition pursuant to section 504(a) of the Labor–Management Reporting and Disclosure Act (the "LMRDA"), 29 U.S.C. § 504(a), was filed on March 2, 2001, the same day that Claudio's employment was terminated. The Union sought leave to intervene and, at the same time, the Union and Claudio sought a preliminary injunction permitting him to work for the Union pending a final determination on the petition. I issued an order to show cause scheduling a hearing for March 27, 2001, with notice to the Government as well as the Bronx District Attorney's Office. Because the Court's Order To Show Cause did not make it clear that the March 27th hearing was intended to consider only the application of the Union and Claudio for interim relief, I issued a clarifying order to that effect on March 20, 2001. The hearing was held on March 27th, on the application for a preliminary injunction.

### DISCUSSION

### A. Applicable Law

#### 1. The LMRDA

Section 504(a) of the LMRDA prohibits any person who has been convicted of cer-

tain enumerated offenses, including robbery and narcotics violations, from serving as an officer, director, employee, or representative of any labor organization. The prohibition applies for thirteen years following the person's conviction or release from prison, whichever is later. 29 U.S.C. § 504(a).[3]

Section 504(a) permits an individual who falls within the prohibition to seek an exemption, for state offenses, in the United States district court for the district in which the offense was committed, "pursuant to sentencing guidelines and policy statements under section 994(a) of Title 28." 29 U.S.C. § 504(a). The district court may grant an exemption if it "determines that such person's service in any capacity [in a labor organization] would not be contrary to the purposes" of the statute. 29 U.S.C. § 504(a). The applicable sentencing guideline provides that:

> relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.

U.S. Sentencing Guidelines Manual § 5J1.1 (2000).

---

**3.** Section 504(a) provides in part:
No person who ... has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III or IV of this chapter[,] any felony involving abuse or misuse of such person's position or employment in a labor organization or employee benefit plan to seek or obtain an illegal gain at the expense of the members of the labor

organization or the beneficiaries of the employee benefit plan, or conspiracy to commit any such crimes[,] ... shall serve or be permitted to serve ... as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, employee, or representative in any capacity of any labor organization ... during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later....
29 U.S.C. § 504(a)(2).

In enacting section 504(a), Congress sought "to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies of the [LMRDA]." 29 U.S.C. § 401(c); *see also United Union of Roofers, Union No. 33 v. Meese*, 823 F.2d 652, 655 (1st Cir. 1987) ("[Congress] intended to create 'strong barriers against the control of unions by unreformed convicted thieves, racketeers, and thugs.'") (quoting Senator Kennedy, 105 Cong. Rec. 7021 (1959)).

Before granting an exemption from the statutory disqualification, the district court must hold a hearing and provide notice to the Secretary of Labor and to state and federal prosecutors in the relevant geographic area. 29 U.S.C. § 504(a).

### 2. *Preliminary Injunction Motions*

■ A preliminary injunction is "an extraordinary and drastic remedy that will not be granted absent a clear showing that the plaintiff has met its burden of proof." *Christie–Spencer Corp. v. Hausman Realty Co., Inc.*, 118 F.Supp.2d 408, 417 (S.D.N.Y.2000). Where, as here, a party seeks a preliminary injunction that would affect governmental action taken in the public interest pursuant to a statutory scheme, the party must show, in addition to irreparable harm in the absence of the requested relief, a likelihood of success on the merits. *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir.2000) (quoting *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir.1999)).

### B. *Application*

The parties agree that Claudio's convictions disqualify him from working for the Union as a business representative. He was released from prison on April 13, 1993. Unless he is granted an exemption, he is barred by section 504(a) from being employed by any labor organization until April 13, 2006—five more years.

Hence, the issues before the Court are whether the Union and Claudio have demonstrated (1) irreparable harm in the absence of a preliminary injunction, and (2) a likelihood of success on the merits. To show a likelihood of success on the merits, petitioners must show that, at the conclusion of these proceedings, Claudio will be able to clearly demonstrate that he has been "rehabilitated" and "can therefore be trusted not to endanger the [Union] in the position for which he ... seeks relief from disability." U.S. Sentencing Guidelines Manual § 5J1.1 (2000). I address these issues in turn and will also discuss certain other considerations.[4]

### 1. *Irreparable Harm*

■ I find that petitioners have demonstrated that the Union will suffer irreparable harm in the absence of a preliminary injunction. The Union is at a critical point in its existence. It is still grappling with the pressures of operating under a trusteeship. A new group of officers—the first fully elected set of officers since the Union was placed into trusteeship—has recently taken the helm. Contracts have expired and need to be renegotiated. There is a

---

4. As a threshold matter, the Government contends that this Court does not have the power to grant a preliminary injunction because an injunction in this case would "impermissibly enjoin prosecutorial discretion in the enforcement of a criminal statute." (Gov't Mem. at 7). The contention is rejected, for petitioners are not asking me to enjoin a criminal prosecution. Rather, the statute permits me to grant an exemption and the Federal Rules of Civil Procedure permit me to issue a preliminary injunction. The statute and Rule 65 together surely give me the authority to issue a preliminary injunction granting an exemption on a preliminary basis pending a final hearing on the petition.

backlog of grievances and other matters that require immediate attention. The workers at Waste Management, the Union's largest and most important shop, are unhappy. In the words of the president, the Union is in "turmoil." (Tr. at 17).

In the brief time that he served as business agent, Claudio made a significant impact in a positive fashion. Because of his language skills, experience in the sanitation industry (including at Waste Management), and other abilities, he has become a valuable and trusted business agent. The Union has had difficulty finding someone with comparable skills and experience. I am persuaded that time is of the essence, and that the Union will suffer if it is deprived of Claudio's services for the next 60–90 days.

### 2. *Likelihood of Success on the Merits*

■ I conclude also that petitioners have demonstrated a likelihood of success on the merits. Although the Government has not completed its investigation, at this juncture, based on the evidence presented so far, I believe that Claudio will be able to persuade me that he should be granted the exemption. I reach this conclusion for the following reasons:

First, Claudio appears to have been rehabilitated since he committed the crimes in question. Since his release from prison eight years ago, he has not broken the law (putting aside his problems with his driver's license). More importantly, by all accounts, he has become a productive citizen. He started a new job just two days after his release from prison. Although the job—collecting garbage—was hardly a glamorous one, he performed well, as he was employed consistently and worked his way up to alternate shop steward. He has turned his life around to the point where his employer is now contending, in es-

sence, that it would be lost without him. It is apparent that he has a passion for and commitment to his work for the members of the Union. In addition, he has moved to a "better" part of the Bronx, he has helped raise six children, and his wife attests to his virtues as a "wonderful" husband and father.

Second, the crimes in question were serious ones, no doubt, but they do not suggest in any way that Claudio is a corrupt or evil person. The first conviction was a narcotics possession misdemeanor—possession of a controlled substance in the seventh degree—committed when Claudio was only 23 years old. The second was a "robbery," but it arose out of an altercation with a neighbor who had been verbally harassing Claudio's wife. Although the statute does include robbery and narcotics violations as disqualifying expenses, the circumstances of the two crimes provide no indication that Claudio has a propensity for the type of violence or corruption that was Congress's principal concern in enacting the statute.

Third, the Union wishes to employ Claudio as a business agent, and I am confident that this is not a position in which Claudio could place the Union in danger, in the sense contemplated by § 5J1.1 of the Guidelines. A business agent usually does not have access to the Union's treasury; to the contrary, a business agent is in the field, meeting with members and representing them in grievances and in other dealings with the employer. As a business agent, Claudio can only help the Union, not endanger it.

Finally, the Union has been operating under a trusteeship and is still being supervised. Indeed, an investigative officer is still reviewing the Union's operations, and it was the investigative officer, in fact, who determined that Claudio was being employed as a business agent in violation

of the LMRDA. Under the watchful eye of the investigating officer, I do not think it likely that Claudio will breach the trust that I am placing in him.

For these reasons, I conclude, on the basis of the record before me, that Claudio is likely to be able to show, at the conclusion of these proceedings, that he is deserving of the exemption and can be trusted not to place the Union in danger.

### 3. Other Considerations

Three other considerations warrant brief discussion.

First, I am concerned that Claudio was employed by the Union for some seven months in violation of the law.[5] The Union obviously was not properly screening new employees, and the argument that the Union should not be able to benefit from its failure to follow procedures certainly gives me pause. See Carollo v. Herman, 84 F.Supp.2d 374, 379 (E.D.N.Y.2000) (holding, where petitioner had been employed by benefits fund for four years and was elected to position as union delegate before seeking the exemption, that fact that petitioner "waited to bring this application until he was found out disentitles him to the extraordinary remedy he seeks"). I am satisfied, however, based on the record before me, that the Union and Claudio did not knowingly violate the law. The moment the matter was brought to the attention of Needham and the Union's attorney, Claudio's employment was terminated. I believe the Union and Claudio have acted in good faith.

Second, although petitioners must squarely demonstrate a likelihood of success on the merits, as a court of equity, I do want to consider all the equities. The fact is that the Government will not be prejudiced by a preliminary injunction granting Claudio a temporary exemption. The Government has not articulated any concrete prejudice, and argues only that the integrity of the system is at stake. (Tr. at 83–86). The integrity of the system is indeed important, but the integrity of the system also requires that temporary relief be granted if it is warranted. On the facts of this case, I believe that temporary relief is warranted. In addition, as the Government proceeds with its investigation, if it should uncover any information that would suggest that the preliminary injunction was improvidently granted, it may immediately seek to vacate the injunction.

Third, the parties have cited only one decision where a petitioner seeking an exemption pursuant to section 504(a) asked a court for a preliminary injunction, but that decision is not dispositive. In Carollo, Judge Gleeson of the Eastern District denied a motion for a preliminary injunction in a proceeding brought by a individual who had worked for a employee benefits fund for some four years and was also elected a union delegate before it was determined that he had previously been convicted of a disqualifying crime. 84 F.Supp.2d 374. Carollo is distinguishable. First, the petitioner went to work for the benefits fund just two years after he was released from prison. Second, he was

---

5. The Government argues that Claudio was in violation of the statute not for seven months but for several years—from the time he was appointed an alternate shop steward. (Tr. at 83). Petitioners dispute this. While I do not decide this issue at this point, I note that the language of the Union's Constitution and By-Laws does appear to support petitioners' position, as section 15.04 provides in part: "The shop steward shall have no authority to order a strike or stoppage of work, nor shall he or she collect or receive dues, initiations, or other money payable to the [U]nion, and he or she shall not be deemed an agent or representative of the Union." (Const. & By-Laws § 15.04).

working in the accounts receivable department, where he was involved in the handling of monies collected from employers. Third, his conviction involved a gun, as he shot someone in both legs; moreover, the incident occurred while he was on probation for an earlier assault conviction. Fourth, no hearing was held on the preliminary injunction motion, notice had not been given to the District Attorney's office of the petition, the benefits fund was not a party in the action, the petitioner did not provide the court with "sufficient information for [it] to make the required determination," and petitioner had not demonstrated that he would suffer irreparable harm. 84 F.Supp.2d at 375, 377, 378–79.

In this case, petitioner had been living a productive life for more than seven years after his release from prison before he began working for the Union. His position as business agent is not one that is likely to place the Union in danger. His crimes were less serious. A hearing was held on the motion, and I heard testimony from the Union president, Claudio, and his wife. Notice was given to the state and federal prosecutors. The Union is a party to this action. And the Union and Claudio have submitted sufficient information to demonstrate that the Union will suffer irreparable harm if the exemption is not temporarily granted.

### CONCLUSION

Accordingly, the motion for a preliminary injunction is granted. I am hereby issuing Claudio a temporary exemption from the prohibition in section 504(a), pending a final hearing on his petition; effective immediately, Claudio is permitted to work for the Union as a business agent.

By July 20, 2001, the Government shall advise the Court and petitioners whether it opposes the petition. If so, the parties shall confer to determine what issues are in dispute and they shall exchange exhibit and witness lists. A final hearing on the petition will be held on August 15, 2001, at 9:30 a.m., in Courtroom 11A of the Daniel Patrick Moynihan United States Courthouse.

SO ORDERED.